**UNITED STATE BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

In re:

| | |
|---|---|
| PEARL COMPANIES, INC., <br> a Florida corporation <br> FEI: **-***-5024 | CASE NO. 10-19336-BKC-JKO <br><br> CHAPTER 11 CASES <br> (Joint Administration Pending) |
| PEARL ARTIST AND CRAFT SUPPLY CORP., <br> a Florida corporation <br> FEI: **-***-7012 | CASE NO. 10-19358-BKC-JKO |
| PEARL ART & CRAFT SUPPLIES OF CALIFORNIA, INC., a California corporation <br> FEI: **-***-6451 | CASE NO. 10-19359-BKC-RBR |
| PEARL ART & CRAFT SUPPLIES OF MASSACHUSETTS, INC., a Massachusetts corporation <br> FEI:**-***-0803 | CASE NO. 10-19362-BKC-JKO |
| PEARL ART & CRAFT SUPPLIES, INC., <br> a New Jersey corporation <br> FEI: **-***-1413 | CASE NO. 10-19363-BKC-RBR |
| PEARL ART SUPPLY WHOLESALERS, INC., <br> a New York corporation <br> FEI: **-***-7544 | CASE NO. 10-19364-BKC-JKO |
| PEARL ARTIST SUPPLIES OF ILLINOIS, INC., <br> an Illinois corporation <br> FEI: **-***- 2396 | CASE NO. 10-19365-BKC-RBR |
| PEARL PAINT COMPANY, INC., <br> a New York corporation <br> FEI: **-***-9970 | CASE NO. 10-19366-BKC-JKO |
| PEARL PAINT OF SUFFOLK COUNTY, INC., <br> a New York corporation <br> FEI: **-*** 0996 | CASE NO. 10-19369-BKC-RBR |
| PEARL ART & CRAFT SUPPLIES OF PENNSYLVANIA, INC., a Pennsylvania corporation <br> FEI:**-***-5774 | CASE NO. 10-10371-BKC-JKO |

    Debtors.
_____/

# DECLARATION OF ROSALIND PERLMUTTER
# IN SUPPORT OF CHAPTER 11 PETITIONS AND FIRST DAY RELIEF

The undersigned Rosalind Perlmutter, being *sui juris* makes the following Declaration in support of the Chapter 11 petitions filed by the above named Debtors and their request for first day relief:

1. I am the President, sole Director and Chief Operating Office of each of the named Debtors, Pearl Companies, Inc. (Pearl or Debtors). I have held these positions for the past 11 years. Prior to that date I was active in the management of Pearl and its various operating subsidiaries with my husband, Robert Perlmutter who was the founder of Pearl. I took over active daily management of the business in 1999 and am familiar with all day-to-day operations, the financial books and records, and all business affairs of the Debtors.

2. The current management further consists of the following:
   a. Rosalind Perlmutter - President and Chief Executive Officer
   b. Frank Vassi - CPA, controller
   c. Ralph Niebles - Director of Information Technology
   d. Joel Arnold - Director of Business Operations
   e. Lois Freidman - Director of Human Resources
   f. Dennis Katz - Director of Purchasing

3. The Debtors filed petitions for relief under Chapter 11 of the Bankruptcy Code on April 9 and 10, 2010 (Petition Date). The Debtors currently operate their businesses as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or unsecured creditors committee has been appointed or established in these cases.

4. Pearl is a privately held company. All the common shares of stock in each of its subsidiaries (the subsidiary entities) is owned directly by Pearl and all entities were operated as a single combined business. Pearl is in the retail business of the sale of artist supplies and craft items and conducts its business in various leased premises. The Debtors do not own any real property but occupy premises subject to leases. An organizational chart is attached as Exhibit "A".

5. The company was founded by Robert Perlmutter in New York City and has been in business for over 60 years.

6.    Pearl has relied on debt and equity financing to fund its operations. In December 2009 Pearl entered into an agreement with its lender, Bank Atlantic, to recast and amend its line of credit. The line was reduced at that time from $5,500,000.00 to $5,000,000.00. The line of credit is secured by all assets of the Debtors, including inventory, furniture and fixtures, accounts receivable and other tangible and intangible property In addition, further security for the line of credit has been supplied by the undersigned declarant consisting of a personal guarantee and liens on independently owned real property. The present value of the inventory on the date of this Declaration is approximately $6,000,000.00 at cost. The inventory value varies daily. The collateral value of the real property on which Bank Atlantic holds liens, based on current market values of the real estate pledged as additional collateral is in excess of $10,000,000.00.

7.    In 2008 the Debtors generated gross revenues of $50,937,868.00 through the operation of 18 stores.  In 2009 the Debtors generated $41,910,926.00.  At present the Debtors have surrendered possession of 11 stores. Those stores have been closed. The Debtors presently operate 6 retail stores, and warehouses for storage of inventory. In addition to the retail store outlets Pearl operates an internet sales business from its Ft. Lauderdale premises.

8.    The 2008 operations of the Debtors resulted in a net loss of $3,208,141.00. The 2009 operations of the Debtors resulted in an anticipated net loss of $6,000,000.00.

9.    Based on reasonable projections of the consolidated operations the Debtors anticipate generating $26,000,000.00 in gross revenue and net revenue of approximately $1,660,000.00 for the ensuing 12 months.

10.    As at 3/16/10 the Debtors, on a consolidated basis reflect assets of approximately $7,900,000.00 and approximately $10,900,000.00 in liabilities that may be summarized as follows:

Assets:

| | |
|---|---:|
| Cash and accounts receivable | $ 830,000.00 |
| Inventory | 6,100,000.00 |
| Fixed Assets | 400,406.00 |
| Other Assets | 617,795.00 |
| Total assets | $7,948, 291.00 |

Liabilities:

| | |
|---|---:|
| Secured bank debt | $2,200,000.00 |
| Accounts payable | 3,815,100.00 |
| Other unsecured liabilities (unpaid rent) | 1,727,401.00 |
| Sales tax payable | 150,000.00 |

|  |  |
|---|---|
| Gift Cards Payable | 1,294,499.00 |
| Customer deposits | $52,508.00 |
| Subordinated shareholder and related entity debt | 2,814,906.00 |
|  |  |
| Total Liabilities | $10,884,914.00 |

Since the stores are no longer operational, the Debtors also have contingent liabilities to lessors of approximately of approximately $4,475,000.00. This amount is undetermined but includes past due rent for closed stores and estimated future damage claims by the lessors. The foregoing summary of assets and liabilities is tentative based on estimated amounts and are subject to further adjustment as the books are closed on the Petition Date.

Prior to the filing of the Chapter 11 petitions, the debtors determined that many of the retail and other operations were not profitable. Accordingly stores in Cambridge MA, Westbury NY., Woodbridge, NJ, Falls Church VA, Atlanta GA, Tampa FL, Chicago IL, San Francisco, CA, Los Angeles CA, Selden NY, Wilton Manors FL and Philadelphia PA were closed. Inventory was liquidated and reduced in order to bring total inventory in line with the size of the remaining store operations and reduce the secured debt obligation to Bank Atlantic. The inventory was consolidated in the remaining stores.

11. In conjunction with the reduction in stores, payroll has been reduced, both store and administrative staff. At the end of December 2009 the Debtors had 379 employees including 31 administrative and corporate employees. Since January 1, 2010 the Debtors have reduced store personnel and administrative staff. At present there are 179 employees including 22 Administrative/Corporate, 8 Direct Marketing/Mail Order and 6 warehouse employees. In addition to personnel reductions, overhead has also been reduced as the Debtors have been able to negotiate rent reductions for store operations in Miami FL, Ft. Lauderdale FL, Canal Street (NYC) NY and Los Angeles CA.

12. By reducing overhead and operational expenses and rent reductions the downsizing has resulted in projected cash flow profit for the remaining ongoing operations on the assumption that sales will remain at least stable in the remaining stores.

13. The continued losses and the need for restructuring of debt lead to the filing of these Chapter 11 petitions. The breathing room occasioned by the filings, the orderly reorganization process and the value of the enterprise should inure to the benefit of creditors,

absent which, in the opinion of management, liquidation of the companies would result in minimal recovery for creditors after satisfaction of the secured debt.

15. Together with the Chapter 11 Petitions and this Declaration, the Debtors have filed first Day motions as follows:

    a. Motion for Joint Administration;

    b. Motion for Authority to file Consolidated Chapter 11 Case Management Summary;

    c. Motion for Limited Notice;

    d. Application for Order of Employment of Sandler & Sandler as Counsel for the debtors in possession , *nunc pro tunc* to the Petition Date;

    e. Emergency Motion of Debtors to Use Cash Collateral, Granting Adequate Protection, Setting Final Hearing;

    f. Emergency Motion to continue use of existing Bank Accounts, Cash Management Systems, and Extending time to Comply with Investment Guidelines of 11 U.S.C. 345;

    g. Motion to Reject Unexpired Leases as of the Petition Date.

15. The Debtors Motion for Joint Administration of these Chapter 11 cases including joint filing of any disclosure statements and reorganization plans and other contested matters is made pursuant to F.R.B.P. 1015(b) and Local Rule 1015-1. None of the Subsidiaries is independent of the parent, Pearl Companies, Inc. (Pearl). Operations of each entity are subject to the financing, administrative and operational control of the parent corporation. Moreover, all financial information, tax reporting and filing for Federal Tax purposes are on a consolidated basis. The financial and business interrelationship are intertwined and no separate financial statements are prepared for public distribution by the Debtors. Internal profit and loss statements are prepared for management purposes.

16. Issues concerning the administration and other matters in these cases are related and overlap so that joint administration will provide the most cost efficient procedure eliminating the need for duplicate notices, motions, applications, hearing and orders saving time for the Debtors, their estates and the court. Records are maintained for each entity. The Debtors recognize that based on a future motion, substantive consolidation may be in order. However, on an interim basis, until that issue may be adjudicated by the Court, after motion and hearing,

administrative consolidation is in the best interest of all interested parties. The foregoing reasons apply equally to the request that the Debtors file a single Consolidated Case Management Summary.

17. I understand that counsel for the Debtors has contacted the Office of the U. S. Trustee in advance of filing the Motion for Administrative Consolidation and have been advised that the U. S. Trustee is not opposed to filing a Consolidated Case Management Summary, subject to the right of the Trustee to request the Debtors file separate Case Management Summaries if the U. S. Trustee believes separate Summaries are needed. Proceeding in this manner is the most efficient way to provide the required information.

18. The Debtors have also filed a motion seeking limitation of notice to creditors and other parties in interest. The Debtors have over 350 vendors, creditors and other parties in interest. To require ongoing notices and mailings to all interested parties are costly and burdensome to the Debtors estates and to counsel. Notice may be limited by court order pursuant to F.R.B.P. 2002(i), and Local Rule 2002-1(K). Limitation of notice of all pleadings in these Chapter 11 cases is requested to those parties as provided in Local Rule 2002-1(K): The U.S. Trustee; the Debtors; Debtors Counsel; any indenture Trustee; members of and counsel for any official committee established by the provisions of 11 U.S.C. 1102, and before such appointment to the creditors shown on the Debtor's List of 20 Largest Unsecured Creditors; creditors holding claims known by the debtors to be secured by property in which the estate has an interest; U.S. and its agencies pursuant to F.R.B.P. 2002(j); parties and attorneys who have formally requested notice by filing with the court and serving Debtors' attorneys notice of appearance and request for service of notices and papers in the case; any examiner or Trustee (and their attorneys) appointed in this case and any parties and entities (including local government units) previously known to the debtor to have particular interest in the subject matter of the notice(s) required to be served. Granting this relief will result in a reduction of administrative costs and expense to the Debtors and administrative burden on the court and its staff. Such relief is in the best interest of the estates, the Debtors and creditors.

19. The Debtors have filed an application to employ Martin L. Sandler of the firm of SANDLER & SANDLER as counsel to the Debtors, effective as of the Petition Date. Counsel has been selected because of the firm's experience with Chapter 11 business reorganization. Counsel has worked extensively with the Debtors prior to the filing of the bankruptcy petitions

and is intimately familiar with the business structure, operations and legal issues confronting the Debtors. Appearance by counsel in these cases will be efficient and cost effective.

20. SANDLER & SANDLER was not owed any costs or fees as of the Petition Date and is not otherwise a creditor of the Debtors.

21. I am aware that a corporation requires representation by counsel licensed in Florida and Federal Court and because of the many issues and matters facing the Debtors on an expedited basis it is my view that irreparable harm will be suffered by the Debtors if the Debtors are unable to obtain immediate services of counsel from the outset of this case, including the immediate use of cash collateral, without which the Debtors' operations will come to a halt, materially and adversely affecting the going concern value of the business and potential for reorganization. Immediate approval of this request for retention of counsel is needed to avoid immediate and irreparable injury.

22. As indicated above, the Debtors have moved for the entry of an Interim Order to use cash collateral on an emergency basis, as defined in 11 U.S.C. 363(a). Absent use of cash collateral the Debtors' operations would cease. An emergency preliminary hearing has been requested pursuant to F.R.B.P 4001(b)(2) at which hearing the Debtors will seek an Interim Order permitting the use of cash collateral in which Bank Atlantic may have an interest. BankAtlantic has consented to the use of cash collateral.

23. BankAtlantic holds a security interest in all assets of the Debtors. In addition, Bank Atlantic holds additional collateral in the form of first and secondary liens in valuable real property, including my residence, together with my personal guarantee.

24. The Debtors have requested the court to permit retention and use of existing cash management systems and business forms. It is my understanding the U.S. Trustee has promulgated operating procedures and guideline for debtors-in-possession as part of that office's supervisory role in Chapter 11 cases. These guidelines include closing of existing bank accounts and opening of debtor-in-possession (DIP) accounts, a DIP account for deposit of estate money for payment of taxes, a separate account for cash collateral and checks for all DIP accounts. The checks are required to designate the account as debtor-in-possession, bankruptcy case number and the account type. The purpose of these guidelines is to present a clear differentiation between pre and post-petition truncation. The Debtors have requested that these guidelines be waived.

25. I am advised and understand that 11 U.S.C. 345 requires certain conditions with respect to all deposits and investments of estate money. The Debtors seek a 30 day extension of time to comply with the requirement of that section of the Bankruptcy Code, or to request that the requirements be waived. The Debtors have asked for a waiver of the requirement that a new set of books be opened as of the Petition Date. This would be an unnecessary cost burden on the Debtors. Based on existing computer capacity, the Debtors can easily distinguish between pre and post-petition transactions. The Debtors use numerous invoices, sales slips, checks, stationery and other business forms in the daily ordinary course of business. Based on the numerous transactions and the scope of the Debtors' business the Debtors need to maintain continued use of these forms. If required to acquire new forms the costs and unnecessary administrative burden would be grossly out of proportion to the procedural mandate. Based on the foregoing reasons it is respectfully requested that the Debtors be permitted to continue use of their existing business forms and to maintain their existing records.

26. In view of the foregoing the Debtors respectfully have asked the court to maintain their existing bank accounts and cash management systems in the same manner and in accordance with their usual and customary practices to ensure a smooth transition to the Chapter 11 case so that there will be minimal disruption in the business operations, Included within the request Debtors seek the authority to close any bank accounts in the exercise of their best business judgment that this action will be in the best interests of their bankruptcy estates.

27. Orderly and smooth transition into the Chapter 11 process requires that the bank accounts be continued with the same account numbers so that there will be a minimal amount of interference with ongoing operations. Conduct of post-petition operations requires that the Debtors be able to issue checks to vendors, service providers, employees and others. Requiring the Debtors to open new accounts, obtain new checks for the new accounts will result in substantial delay and disrupt the Debtors business. All parties in interest will benefit from preservation of the normal business operations and elimination of administrative issues that new accounts and checks would create. Resulting benefits to the estates by authorizing this request will be significant to the Debtors. I further understand that no checks issued prior to the Petition Date that have not previously been paid will be honored.

28. The Debtors' primary bank accounts are maintained at BankAtlantic. Each retail store maintains a bank account with a bank in the local vicinity for deposit of all daily receipts. A

schedule of these accounts and the name of the respective stores that are associated with these accounts is attached as Exhibit "B". Periodic sweeps and transfers to the main account are made to the BankAtlantic account. BankAtlantic applies the receipts first to interest and then to the revolving loan balance. The Debtors may draw upon the loan for working capital as needed up to the maximum amount of the loan. The Debtors employ the Cash Management System to effect the smooth operation of their business. This system is similar to systems used by businesses similar to that of other Debtors with multiple retail outlets.

29. The Debtors transfer gross payroll for each pay period to Broadway Data Base of Brooklyn, NY (BDB) from its operating account at BankAtlantic and all employee salaries together with applicable taxes are disbursed by that firm. BDB also deposits the taxes required to be paid with each payroll and provides the Debtors with copies of all tax fillings.

30. The Debtors will continue maintenance of the requisite records regarding all transfers between the various accounts so that these transactions may be ascertained contemporaneously with each transaction. The Debtors will instruct each bank to add information to their current and future accounts as "Debtor-in-Possession" or "DIP" on the accounts. The banks will also be instructed to treat these accounts for all purposes as DIP accounts and will maintain records showing the separation between pre-petition and Post-petition transfers.

31. To the extent that the Debtors' cash and investments do not comply with the requirements of 11 U.S.C. 345, I believe the cash and investments are reasonably safe as the financial institutions used to deposit funds are financially stable. Debtors believe that each of the depositories is an authorized depository as identified on the acceptable depositories in the U.S. Trustee's guidelines. If required, an extension of time to comply with the statutory guidelines should not be a risk to the Debtors' estates or creditors. An abrupt change in these procedures, because of the substantial sums involved from time to time, would result in a significant delay as the Debtors assess appropriate alternative accounts for the deposits that would satisfy the requirements. Such a change would disrupt the Cash Management System and the orderly control of funds. Maintaining the current procedures would not adversely affect the Debtors' estate or creditors. A reasonable extension of time to conform with the statutory requirements is justified under the circumstances.

32. I am advised by counsel that numerous bankruptcy cases in this district have permitted this deviation from 11 U.S.C. 345 as a narrow and strict enforcement is not always in the best interest of the parties to the case or the purposes of Chapter 11.

33. The Debtors seek to continue payment of wages and salaries to employees. Some of the employees are paid on an hourly basis and from time to time receive overtime pay. Payments to these employees are made through BDB. The time clocks are polled and all amounts due are calculated by that payroll service. The gross payroll for all employees, including salaried employees is approximately $105,000.00 per week, including appropriate taxes. All taxes, whether employer or employee obligations are paid as each payment of wages and salaries is made through BDB. All prepetition wages have been paid, except for the payroll ending March

34. Vacation, sick leave and holiday benefits are based on the company's employee manual. Some employees have been terminated prior to filing the Petition. A determination of the amount and entitlement for each such employee is being calculated and will be scheduled when our bankruptcy schedules are prepared and filed.

35. The Debtors, in the ordinary course of business, from time to time, are required to make deductions form employee's compensation that may relate to requisite tax withholdings for state, federal and local taxes, child support orders or garnishments. Authority is requested by the Debtors to pay over to the appropriate parties any such funds according to the Debtors' current business practices and policies. If the Debtors are not granted permission to make these required payments, employees and their families will be adversely affected. If the Debtors are precluded from making such payments, employees who are key to the business operations of the Debtors may seek employment elsewhere. Such payments will not adversely affect rights of creditors and the value of the Debtors' estates will not be diminished.

36. The Debtors seek authority, but not the direction, to pay any prepetition sales, use, trust fund or other similar obligations in the ordinary course of business and if the Debtors have paid any taxes that should not have been paid to seek recovery of the payment. If the Debtors dispute any prepetition tax the Debtor request authority to set aside in a segregated account sufficient funds to pay the tax until a final determination is made as to whether the Debtors are obligated to pay the tax.

37. The Debtors have and continue to downsize and consolidate their business operations. In that regard many retail store outlets were closed. Those closed stores were either voluntarily surrendered to the lessor or were subject to removal of tenant proceedings that the debtors did not contest. The leases represented by these closed store operations are not necessary or required for the Debtors' continued business and will play no part in ongoing operation of the Debtors business. They have no value and are burdensome to the Debtors. Pursuant to 11 U.S.C. 105(a), 365(a) and 554 the Debtors request the court to authorize and approve rejection of the unexpired leases and abandonment of any assets remaining on the leased premises. Attached as Exhibit "C" is a schedule of closed stores and leases that the Debtors request authority to reject, including a description and the value of any assets remaining on the respective premises.

38. This is the end of my Declaration.

I, the undersigned Rosalind Perlmutter under the penalty of perjury declare that the foregoing statements made in this Declaration are true and correct to the best of my knowledge.

Dated this April 7, 2010.

*(signature)*
Rosalind Perlmutter, President
Pearl Companies, Inc., et al

| Bank | A/C No. | Description | Bank Address | |
|---|---|---|---|---|
| Bank Atlantic | 55687683 | Operating Concentration A/C | 701 W. Cypress Creek Rd. | |
| Bank Atlantic | 55687709 | North South Concentration A/C | 4295 N. Andrews Ave. | |
| Bank Atlantic | 93000238 | North South Disbursement A/C | 701 W. Cypress Creek Rd. | |
| Wachovia | 2000016130632 | Depository Concentration A/C | 350 E Las Olas Blvd, Suite 100 | |
| Wachovia | 2000016131220 | Depository A/C - Atlanta | 4454 Roswell Road NE, Atlanta GA 30342 | CLOSED |
| Wachovia | 2000045444412 | Depository A/C - Tampa | 3918 W. Hillsborough Ave, Tampa FL 33614 | CLOSED |
| Wachovia | 2000016130645 | Depository A/C - Canal St. | 100 Clover Road, Ezdison NJ | |
| Wachovia | 2000016130661 | Depository A/C - Frame Shop | 100 Clover Road, Ezdison NJ | |
| Wachovia | 2000016130674 | Depository A/C - Craft Ctr. | 100 Clover Road, Ezdison NJ | |
| Bank of America | 483025683870 | Depository A/C - Westbury | 248 Post Avenue, Westbury NY 11590 | CLOSED |
| Wachovia | 2000016130700 | Depository A/C - Paramus | 859 N.RT-17, Paramus NJ | |
| Bank Atlantic | 55687691 | Atlantic Concentration A/C | 4295 N. Andrews Ave. | |
| Bank Atlantic | 93000220 | Atlantic Disbursement A/C | 701 W. Cypress Creek Rd. | |
| Bank of America | 005487961505 | Bank America Concentration A/C | 1601 E Oakland Park Blvd | |
| Bank of America | 229026213856 | Depository A/C - Selden | College Rd R route 25 | CLOSED |
| Wachovia | 2000016131314 | Depository A/C - Falls Church | 3440 Jefferson street | CLOSED |
| Sovereign Bank | 75860000357 | Depository A/C - Cambridge | 515 Massachusetts Ave. | CLOSED |
| Wachovia | 2000016131327 | Depository A/C - Philadelphia | 1400 E.Passyunk Ave. | CLOSED |
| Wachovia | 2000016131330 | Depository A/C - Rockville | 110 Congressional lane ( Congressional Plaza) | CLOSED |
| Bank of America | 229026304888 | Depository A/C - Woodbridge | US-1 & Grill Lane (1-800-841-4000) | CLOSED |
| Bank of America | 005487961547 | Depository A/C - Chicago | 1419 Wells Street | CLOSED |
| Bank of America | 005487961521 | Depository A/C - Los Angeles | 8501 Pico Blvd. | CLOSED |
| Bank of America | 005487961534 | Depository A/C - San Francisco | Dunbar | |

Wilton Manors, Direct Marketing, Fort Lauderdale and Miami are deposited directly into Bank Atlantic North South Concentration A/C 55687709

All credit card activity is deposited into Bank Atlantic

EXHIBIT "A"

PEARL COMPANIES ORGANIZATIONAL CHART

PEARL COMPANIES, INC., a Florida corporation-Parent holding company

Subsidiaries wholly owned by Pearl Companies, Inc.

PEARL PAINT COMPANY, INC., a New York corporation
PEARL ARTIST AND CRAFT SUPPLY CORP., a Florida corporation
PEARL ART SUPPLY WHOLESALERS, INC., a New York corporation
PEARL ART & CRAFT SUPPLIES, INC, a New Jersey corporation
PEARL ART & CRAFT SUPPLIES OF CALIFORNIA, INC., a California corporation,
PEARL PAINT OF SUFFOLK COUNTY, INC, New York corporation
PEARL ART & CRAFT SUPPLIES OF MASSACHUSETTS, INC., a Massachusetts corporation
PEARL ARTIST SUPPLIES OF ILLINOIS, INC., an Illinois corporation.
PEARL ARE & CRAFT SUPPLIES OF PENNSYLVANIA, INC., a Pennsylvania corporation

EXHIBIT
"B"