# UNITED STATE BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### FORT LAUDERDALE DIVISION

In re:

| | |
|---|---|
| PEARL COMPANIES, INC.,<br> a Florida corporation<br>FEI: **-***-5024 | CASE NO.  10-19336-BKC-JKO<br><br>CHAPTER 11 CASES<br>(Joint Administration Pending) |
| PEARL ARTIST AND CRAFT SUPPLY CORP.,<br>a Florida corporation<br>FEI: **-***-7012 | CASE NO. 10-19358-BKC-JKO |
| PEARL ART & CRAFT SUPPLIES OF CALIFORNIA,<br>INC., a California corporation<br>FEI: **-***-6451 | CASE NO. 10-19359-BKC-RBR |
| PEARL ART & CRAFT SUPPLIES OF<br>MASSACHUSETTS, INC., a Massachusetts corporation<br>FEI:**-***-0803 | CASE NO. 10-19362-BKC-JKO |
| PEARL ART & CRAFT SUPPLIES, INC.,<br>a New Jersey corporation<br>FEI: **-***-1413 | CASE NO. 10-19363-BKC-RBR |
| PEARL ART SUPPLY WHOLESALERS, INC.,<br>a New York corporation<br>FEI: **-***-7544 | CASE NO. 10-19364-BKC-JKO |
| PEARL ARTIST SUPPLIES OF ILLINOIS, INC.,<br>an Illinois corporation<br>FEI: **-***- 2396 | CASE NO. 10-19365-BKC-RBR |
| PEARL PAINT COMPANY, INC.,<br>a New York corporation<br>FEI: **-***-9970 | CASE NO. 10-19366-BKC-JKO |
| PEARL PAINT OF SUFFOLK COUNTY, INC.,<br>a New York corporation<br>FEI: **-*** 0996 | CASE NO. 10-19369-BKC-RBR |
| PEARL ART & CRAFT SUPPLIES OF<br>PENNSYLVANIA, INC., a Pennsylvania corporation<br>FEI:**-***-5774 | CASE NO. 10-10371-BKC-JKO |

   Debtors.

_____/

**DEBTORS' EMERGENCY AGREED[1] MOTION
FOR INTERIM AND FINAL ORDERS (1) APPROVING SECURED POST-
PETITION INTERIM FINANCING, (2) AUTHORIZING USE OF CASH
COLLATERAL, (3) GRANTING LIENS AND PROVIDING SUPERPRIORITY
ADMINISTRATIVE EXPENSE STATUS, (4) MODIFYING AUTOMATIC STAY,
AND (5) SETTING FINAL HEARING UNDER FED. R. BANKR, P. 4001**

**AND**

**CERTIFICATE OF NECESSITY OF
REQUEST FOR EMERGENCY INTERIM HEARING**

**The Debtors request that the court hear this motion on an emergency basis. All of the Debtors' assets are security for the working capital line of credit with BankAtlantic. The Debtors operate retail stores and the proceeds resulting from the sale of inventory constitutes cash collateral of BankAtlantic. Without the ability to access the use of cash and to fund operations by access to the proposed postpetition Revolving Credit Agreement Debtors will be unable to continue operations and preserve going concern value.**

The Debtors, Pearl Companies, Inc., Pearl Paint Company, Inc., Pearl Artist & Supply Corp. Pearl Art & Craft Supplies, Inc., Pearl Artist Supplies of Illinois, Inc., Pearl Art & Supplies of California, Inc., Pearl Paint of Suffolk County, Inc., Pearl Art & Craft Supplies of Massachusetts, Inc., Pearl Art Supply Wholesalers, Inc., Pearl Art & Craft Supplies of Pennsylvania, Inc. **(collectively, "Debtors")**, with the consent of BankAtlantic, the holder of the first lien on the Debtors' property (defined below as "Existing Collateral"), jointly request the Court to enter an interim order, substantially in the form attached hereto as Exhibit "A" **("Interim Financing Order")** and a final Order **(collectively, "DIP Orders")**, (1) authorizing the Debtors to obtain post-petition financing and granting security interests as provided in the proposed Interim Financing Order on a secured and super-priority administrative expense basis; (2) authorizing the Debtors' use of cash collateral, as that term is defined in § 363 of the Bankruptcy Code, in which BankAtlantic has an interest **("BankAtlantic Cash Collateral")**; (3) modifying the automatic stay under § 362 of the Bankruptcy Code; (4) providing adequate

---

[1] This Motion is agreed to by BankAtlantic. Bank Atlantic reserves the right to add, remove or change a term herein prior to the Interim and Final Hearings.

protection under §§ 361 and 363 of the Bankruptcy Code; and (5) approving the form of notice and scheduling a final hearing (**"Final Hearing"**) pursuant to Bankruptcy Rule 4001.  In support of this Motion, the Debtors respectfully represent as follows:

## I.    Introduction[2]

BankAtlantic has indicated a willingness to lend money to the Debtors that would potentially bail out the Debtors' estates.  Subject to the Court's approval, BankAtlantic is willing to initially lend to the Debtors the aggregate principal amount of $3,100,000.00 (inclusive of the pre-petition indebtedness) as a revolving line of credit (**"Interim Financing"**).  The Interim Financing would be used primarily for working capital.  In addition, the Interim Financing would be used to pay costs necessary to (i) preserve and maintain the Debtors' Assets, (ii) pay suppliers, employees, and other creditors, and (iii) pay the Debtors' other critical ongoing post-petition obligations, whether independent, joint, several or otherwise.

The Debtors respectfully submit that the preservation and maintenance of the Debtors' Assets and the Debtors' ability to restructure their operations under chapter 11 are wholly dependent upon obtaining post-petition financing.  BankAtlantic is the only lender that has offered post-petition financing to the Debtors, and despite diligent efforts, the Debtors have been unable to obtain credit elsewhere.  The Debtors do not foresee any other options for post-petition financing.  Based on an approved budget (See Exhibit "B"), ongoing operations will be of great benefit to creditors and the Debtors emerging from chapter 11 bankruptcy as viable businesses in the community.

Based on the foregoing and the reasons more fully stated in this Motion, the Debtors respectfully request the Court to authorize the Interim Financing, pursuant to the terms and conditions stated in this Motion.

---

[2]To the extent not already defined, capitalized terms are as defined later in the Motion or, to the extent not defined herein, as defined in the Interim Financing Order.

## II.   Jurisdiction

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are §§ 105, 361, 362, 363, 364, 503 and 506 of Title 11 of the United States Code, 11 U.S.C. §101, et seq. (**"Bankruptcy Code"**), Rules 2002, 4001, 9013 and 9014 of the Federal Rules of Bankruptcy Procedure (**"Bankruptcy Rules"**).

## III.   Relief Requested
## (Concise Statement Pursuant to Bankruptcy Rule 4001(1)(B))

3.      BankAtlantic holds (i) a first priority security interest in personal property and (ii) duly perfected secured liens in respect of virtually all of the assets (**collectively, "Existing Collateral"**).  The Debtors believe there is meaningful equity in the Existing Collateral as well as other property and assets of the Debtors' estates (**collectively, "Assets"**).

4.      Subject to the Court's approval, BankAtlantic agrees to provide Interim Financing to the Debtors in the aggregate principal amount of $3,100,000.00 as a revolving line of credit, subject to the terms and conditions of this Motion and the Interim Financing Order.

5.      The material provisions of the Interim Financing required to be disclosed pursuant to Bankruptcy Rule 4001(1)(B), are described in detail in the Interim Financing Order and briefly below:

        a.   **Amount:**  Subject to the conditions in this Motion and the Interim Financing Order, BankAtlantic shall provide Interim Financing in the aggregate principal amount of $3,100,000.00 ( inclusive of prepetition indebtedness) for the benefit of the Debtors' estates**.**

        b.   **Use of Proceeds:**  The Interim Financing shall be used primarily for working capital and to (i) preserve and maintain the Debtors' Assets, (ii) pay suppliers, employees, and

other creditors, and (iii) pay the Debtors' other critical ongoing post-petition obligations, whether independent, joint, several or otherwise.

      c.  **Procedures for Borrowing:**  The Debtors may borrow from the Interim Financing by requesting funds from BankAtlantic by drawing on the line of credit.  The request shall include (i) the amount to be borrowed, (ii) the purpose of the borrowing, and (iii) a statement that the borrowing complies in all respects with the terms of the Interim Financing Order and that there is no Event of Default.

      d.  **Interest:** Interest on the Interim Financing shall accrue at the rate of prime plus 4% calculated daily with a floor of 8%.

      e.  **Fees:**  The Interim Financing is subject to a fee of $62,000.00 (2%).

      f.  **Maturity:**  The Interim Financing, plus all accrued interest and charges, matures and shall be paid in full on the earlier of the (i) effective date of a confirmed Chapter 11 Plan of Reorganization for the Debtors' estates; (ii) December 31, 2011; (iii)  an Event of Default

      g.  **Events of Default**:  The events of default are set forth in the Interim Financing Order and include, without limitation, as to any of the Debtors' cases  (i) being converted to cases under Chapter 7 of the Bankruptcy Code, or dismissed, or a motion requesting such relief shall have been filed; (ii) the appointment of a trustee under § 1104 of the Bankruptcy Code; (iii) appointment of an examiner with enlarged powers under § 1106(b) of the Bankruptcy Code, and (iv) failure to perform under the terms of the Interim Financing Order; failure to conform to the budget; sale of material assets (more than $50,000.00 in value in one sale) without prior written consent of BankAtlantic; default will also authorize BankAtlantic to appoint a Chief Restructuring Officer and authority to record the mortgage on 308 Canal Street, New York, New York.

      h.  **Replacement Liens:** BankAtlantic will be granted first priority perfected replacement liens upon the exact same Existing Collateral that the Debtors pledged to BankAtlantic pre-petition.  *See* paragraph 5 of Interim Financing Order.

i.  **Super-Priority Administrative Claim:** BankAtlantic will also be granted a superpriority administrative claim pursuant to § 362(c)(1) against the Debtors' estates for the Interim Financing, plus all applicable interest and charges, over all administrative claims and unsecured claims of the Debtors and their estates. See paragraph 7 of Interim Financing Order.

j.  **BankAtlantic Pre-Petition Secured Claim**:  Providing no objections are filed before the Challenge Period Termination Date (defined in the Interim Financing Order), BankAtlantic will be allowed secured claims in an amount not less than the value of the Existing Collateral on the Petition Date pursuant to §§ 502 and 506 of the Bankruptcy Code, subject to the terms and conditions in the Interim Financing Order.  *See* Interim Financing Order.

k.  **Post-Petition Liens and Financing Documents:**  The Interim Financing will be evidenced by such notes, mortgages, assignments, and other security documents (**"Post-Petition Financing Documents"**) as may be required by BankAtlantic to accomplish the security set forth in this Motion and Interim Financing Order, including (i) a first-priority security interest and lien in and to all of the Debtors' assets, whether real, personal, or mixed, and whether now or hereafter existing, which is not otherwise subject to any existing valid, perfected, and enforceable security interest or lien; and (ii) a security interest and lien in and to all of the Debtors' assets, whether real, personal, or mixed, and whether now or hereafter existing which is subject to any existing valid, perfected, and enforceable security interest or lien which security interest and lien, if granted by this Court, shall be junior only to such existing security interest or lien  (**"Post-Petition Liens"**).

l.  **Modification of Automatic Stay:**  Paragraph 14 of the Interim Financing Order provides that the automatic stay imposed under Bankruptcy Code § 362 shall be modified as to the Debtors and BankAtlantic, and their agents, as is necessary to implement the provisions of the Interim Financing Order and Post-Petition Financing Documents, including without limitation, to file or record any UCC financing statements, mortgages and other instruments and documents evidencing the security interests and liens granted to BankAtlantic, and to enforce BankAtlantic's security interests and liens, or exercise any other rights or remedies upon the Debtors' default under the Interim Financing Order or Post-Petition Financing Documents; and the stay of any such relief under Bankruptcy Rule 4001(a)(2) shall not apply.

m. **A release, waiver, or limitation on any claim or other cause of action belonging to the estate or the Debtors, including any modification of the statute of limitations or other deadline to commence an action:** Subject to objections as allowed by the Interim Financing Order, and subject to all other terms and conditions of the Interim Financing Order, the Debtors agree to (i) release and discharge BankAtlantic from any and all claims and causes of action arising out of, based upon or related to the Pre-Petition Financing Documents, Interim Financing, and all other instruments and documents executed or delivered in connection therewith, (ii) waive any and all claims, defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability, and avoidability (under §§ 510, 544, 545, 547, 548, 549, 550, 552 or 553 of the Bankruptcy Code or otherwise) of the obligations or the security interests, mortgages, deeds, and liens granted to secure the obligations, and (iii) agree, without further Court order, to the allowance of the claims of BankAtlantic as secured claims in an amount not less than the value of the Existing Collateral on the Petition Date pursuant to §§ 502 and 506 of the Bankruptcy Code. *See* Interim Financing Order, paragraph 19.

n. **Waiver of 506 (c) Rights:** The Debtors shall irrevocably waive and shall not assert any surcharge claim against BankAtlantic under § 506(c) of the Bankruptcy Code.

o. **Adequate Protection:** Pursuant to paragraph 9 of the Interim Financing Order, BankAtlantic will receive (i) the Replacement Liens (as defined in the Interim Financing Order) as adequate protection on the Existing Collateral, (ii) a Superpriority Administrative Claim (as defined in the Interim Financing Order) over all administrative claims and unsecured claims of the Debtors and their estates, and (iii) the Post-Petition Liens as set forth in the Interim Financing Order.

p. **DIP Lender's counsel fees and costs:** Limited to $35,000.00 solely fees and costs incurred related to closing the Interim Financing and shall not limit BankAtlantic's right to include all other costs and fees in its debt claim. And in the Event of a Default this limitation is waived.

q. **Additional collateral security**: As additional security, Perlmutter has agreed to execute and allow BankAtlanitc to record a covenant not to encumber  property described as 308 Canal Street, New York, New York, and, in the Event of a Default, such parties agree that

7

BankAtlanitc may then immediately record a mortgage lien on the property described as 308 Canal Street, New York, New York, without further court order or authorization from Perlmutter. Perlmutter shall execute any and all documents to assist with these transaction upon the request of BankAtlantic.

## IV.    Background

A. **Debtors' Bankruptcy Cases**:

6.    On April 9, 2010 ("Petition Date"), the Debtors Pearl Companies, Inc. and its subsidiaries filed voluntary petitions, in the United States Bankruptcy Court, Southern District of Florida, for relief under Chapter 11 of the Bankruptcy Code.

7.    A motion for joint administration of the cases has been filed and the Motion is pending before the Court. The Debtors continue to operate their businesses and manage their Assets as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

8.    As of the date hereof, no statutory creditors' committee, trustee or examiner has been appointed in these cases.

B. **Debtors' Business Structure:**

9.    The Debtors are in the business of retail selling of artist and arts and craft supplies in various locations in Florida, New York, New Jersey and California in addition to an internet sales division. The primary corporate offices and officers, books and records of each of the parent and subsidiaries are located and maintained in Ft. Lauderdale, Florida at the offices of the corporate headquarters.   Each of the related entities is a subsidiary of Pearl Companies, Inc.

C. **Description of the Debtors' Prepetition Financing with BankAtlantic:**

10.    The Debtors and Guarantors and BankAtlantic, as prepetition lender, are parties to a Revolving Credit Loan Agreement dated Aril 15, 2003, as thereafter amended pursuant to a Third Amendment to the April 15, 2003 Agreement dated December 11, 2009. Pursuant to the

Third Amendment, BankAtlantic provided working capital in the form of a revolving credit line in the maximum amount of $5,000,000.00 secured by a senior lien on substantially all of the Debtors' assets. Advances under the line of credit were based on a formula percentage of inventory value at cost. In consideration for the Loan, Rosalind Perlmutter and The Robert Perlmutter Amended and Restated Revocable Living Trust (collectively, "Perlmutter") executed and delivered to BankAtlantic an Absolute, Unconditional and Continuing Guaranty and a Reaffirmation of Guaranty (collectively, "Guaranty") for payment of the Loan. The Loan Documents and Guaranty, together with all other agreements, documents, mortgages, notes, deeds, assignments, security instruments and any other documents delivered pursuant thereto or in connection therewith are hereinafter referred to collectively as the "Pre-Petition Financing Documents."

11.    Pursuant to the Pre-Petition Financing Documents, the Borrowers and Perlmutter were, as of the Petition Date, jointly and severally indebted to BankAtlantic exclusive of accrued but unpaid interest, costs, fees and expenses, in the approximate principal amount of $2,212,000.00 (as may be amended, the "Pre-Petition Indebtedness"). For purposes of this Motion and the Interim Financing Order, the term "Pre-Petition Indebtedness" shall mean and include, without duplication, any and all amounts owing or outstanding under the Pre-Petition Financing Documents, and all interest on, fees and other costs, expenses and charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees and expenses that are chargeable or reimbursable under the applicable provisions of the Pre-Petition Financing Documents).

12.    Pursuant to the Pre-Petition Financing Documents, Perlmutter and the Borrowers granted to and/or for the benefit of BankAtlantic continuing pledges, liens and security interests ("Pre-Petition Liens") to secure the Pre-Petition Indebtedness and any guarantees thereof, in and

9

upon substantially all of the Existing Collateral, whether real or personal, tangible or intangible and wherever located, whether now or hereafter existing or acquired, and all the proceeds, products, offspring, rents and profits thereof.

13.     BankAtlantic contends that as of the Petition Date and immediately prior to giving effect to the Interim Financing Order, (a) the Pre-Petition Financing Documents are valid and binding agreements and obligations of the Borrowers and Perlmutter and the Pre-Petition Liens (i) constitute valid, binding, enforceable and perfected priority security interests and Liens, which are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and which are senior in priority to any other liens under applicable law and after giving effect to any applicable subordination or intercreditor agreements (such liens, the "Prior Permitted Liens"), and (b) the Pre-Petition Indebtedness constitutes the legal, valid and binding obligation of Borrowers and Perlmutter, enforceable in accordance with its terms, (i) no objection, offset, defense or counterclaim of any kind or nature to the Pre-Petition Indebtedness exists, and (ii) the Pre-Petition Indebtedness, and any amounts paid at any time to BankAtlantic on account thereof or with respect thereto, are not subject to avoidance, reduction, disallowance, impairment, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

14.     BankAtlantic contends that, among other items, all amounts on deposit in the Debtors' banking, checking, and other deposit accounts relating to the Existing Collateral constitute BankAtlantic's Cash Collateral within the meaning of § 363 of the Bankruptcy Code, in which BankAtlantic has a security interest in order to secure the Pre-Petition Indebtedness.

## V.    Relief Requested

15.    The details of the relief requested in this Motion are set forth in the Concise Statement Pursuant to Bankruptcy Rule 4001(1)(b) in paragraph 3 above and for purposes of brevity, are not restated herein.  In sum, by way of this Motion, Debtors seek an Order from the Court: (1) authorizing the Debtors to obtain the Interim Financing in the aggregate principal amount of $3,100,000.00 from BankAtlantic, subject to the terms and conditions stated in this Motion and the Interim Financing Order; (2) granting BankAtlantic Replacement Liens, security interests in substantially all of the Debtors' Assets, an allowed secured claim subject to objections by the Challenge Termination Date, and a Super-Priority Administrative Claim; (3) authorizing the Debtors' use of BankAtlantic's Cash Collateral; (4) modifying the automatic stay under § 362 of the Bankruptcy Code; (5) providing adequate protection under § 361 and 363 of the Bankruptcy Code; and (6) approving the form of notice and scheduling a Final Hearing pursuant to Bankruptcy Rule 4001.

## VI.    Basis for Relief

### A.    The Debtors' Need for Postpetition Financing

16.    The Debtors are unable to obtain unsecured or other credit for the purpose of paying the expenses of obtaining appraisals, securing and maintaining the Assets, and funding ongoing operations.  Failing to pay these expenses will negatively impact the value of the assets, the Debtors going concern value and impair the interests of all creditors and other parties-in-interest.  The value of the assets will be maximized for the benefit of the Debtors' estates if the Interim Financing is obtained.

17.    Immediate access to the Interim Financing and use of BankAtlantic's Cash Collateral will enable the Debtors to (i) continue operations and support the likelihood of a viable Plan of Reorganization, (ii) maintain and preserve their assets, and (iii) demonstrate to

their vendors, suppliers, customers and employees that they have sufficient capital to ensure ongoing operations.  Absent approval of the Interim Financing Order, the Debtors may have to curtail or even terminate their business operations to the material detriment of all parties in interest.

18.    Section 364 of the Bankruptcy Code distinguishes among (a) obtaining unsecured credit in the ordinary course of business, (b) obtaining unsecured credit out of the ordinary course of business, and (c) obtaining credit with specialized priority or with security.  If a debtor in possession cannot obtain postpetition credit on an unsecured basis, the court may authorize the debtor to obtain credit or incur debt, repayment of which is entitled to superpriority administrative expense status or is secured by a lien on unencumbered property, a junior lien on encumbered property or a combination of these protections.  11 U.S.C. § 364(c).[3] In addition, if a debtor in possession cannot obtain credit by resort solely to the protections available under § 364(c), the court may authorize the debtor to grant a lender a first-priority priming lien in encumbered assets of the debtor, so long as adequate protection is granted to holders of existing liens in such property.[4]

---

[3] Section 364(c) of the Bankruptcy Code provides as follows:

(c)    If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt -

(1)    with priority over any of all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;

(2) secured by a lien on property of the estate that is not otherwise subject to a lien; or

(3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

[4] Section 364(d)(1) of the Bankruptcy Code provides as follows:

(1)    The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if -

(A) the trustee is unable to obtain such credit otherwise; and

(B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

19.     Debtors were unsuccessful in their attempt to obtain financing (a) as unsecured credit pursuant to § 364(a) or (b) of the Bankruptcy Code, (c) allowable as an administrative expense under § 503(b)(1) of the Bankruptcy Code or (d) as secured credit pursuant to § 364(c) of the Bankruptcy Code from other sources.  The Debtors, therefore, have no choice but to seek credit on the secured basis provided for in the Interim Financing Moreover, and as outlined above, the type of security contemplated under the Interim Financing, which was required in consideration of the Debtors' current financial circumstances and that of the real estate market and economy in general, is precisely the type of security authorized by the Bankruptcy Code.

20.     The Debtors rely on the Declaration of Rosalind Perlmutter (CP #5) in support of this Motion. The Court, creditors and parties in interest are directed to the Declaration for a detailed description of the events leading to the Chapter 11 petitions, the Debtors' business and operations, the need for financing and the negotiation of the Postpetition DIP Facility proposed in this Motion.

B.     **The Requested Relief Should Be Granted Pursuant to § 364(c) of the Bankruptcy Code**

21.     A debtor seeking financing under § 364(c) of the Bankruptcy Code must make a reasonable effort to seek other sources of unsecured credit, but is granted deference in acting in accordance with its business judgment and is not required to seek credit from every possible

---

11 U.S.C. § 364(d)(1). Section 361 of the Bankruptcy Code, which defines "adequate protection," provides that

When adequate protection is required under section 362, 363 or 364 of this title of an interest of an entity in property, such adequate protection may be provided by -

(1)     requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

(2)     providing such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

(3)     granting such other relief, other than entitling such entity to compensation allowed under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

source.  Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.), 789 F.2d 1085 (4th

Cir. 1986) (the fact that the trustee contacted other financial institutions in the immediate

geographic area and was unsuccessful satisfied the requirements of § 364(c), since "[t]he statute

imposes no duty to seek credit from every possible lender before concluding that such credit is

unavailable"); see also In re Garland Corp., 6 B.R. 456, 461 (1st Cir. B.A.P. 1980) (secured

credit under § 364(c)(2) authorized, after notice and a hearing, upon showing that unsecured

credit unobtainable); In re Stanley Hotel, Inc., 15 B.R. 660, 663 (D. Colo. 1981) (bankruptcy

court's finding that two national banks refused to grant unsecured loans was sufficient to support

conclusion that § 364 requirement was met); In re Gemini Cargo Logistics, Inc., No. 06-10870

(Bankr. S.D. Fla. Apr. 10, 2006) (the requirements of § 364(c) of the Bankruptcy code were met

because no alternative financing was available on any other basis); In re Ames Dept. Stores, Inc.,

115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990) (debtor must show that it made reasonable efforts to

seek other sources of financing under § 364(a), (b)).

22.     The Debtors were simply unable to procure financing on an unsecured basis.

Ultimately, the Debtors and their advisors determined that the best financing proposal, in terms

of cost and liquidity, was that provided by BankAtlantic.  Consequently, the Debtors' efforts to

obtain postpetition financing satisfy the statutory requirement of § 364(c) of the Bankruptcy

Code.

C.     **The Terms of the Interim Financing Are the Best Available Under the
       Circumstances**

23.     The Interim Financing reflects the exercise of sound and prudent business

judgment.  To the extent possible, the Debtors have canvassed the available credit markets and

have been unable to obtain financing on terms better than those provided in the Interim

Financing.   Thus, in the Debtors' considered business judgment, the Interim Financing is the

best financing option available in the circumstances of these cases.

14

24.     The proposed terms of the Interim Financing were negotiated in good faith and at arms' length among the parties.  As contemplated by the policies underlying the Bankruptcy Code, the purpose of the Interim Financing is to enable the Debtors to maintain the value of their estates while formulating a confirmable plan of reorganization.  See, e.g., In re First S. Sav. Ass'n, 820 F.2d 700, 710-15 (5th Cir. 1987).  Moreover, the various fees and charges required under the Interim Financing are reasonable and appropriate under the circumstances.  Indeed, courts routinely authorize similar lender incentives beyond the explicit liens and rights specified in § 364.  See, e.g., In re Delphi Corp., No. 05-44481 (Bankr. S.D.N.Y. Jan. 5, 2007); In re Defender Drug Stores, Inc., 145 B.R. 312, 316 (9th Cir. BAP 1992) (approving financing facility pursuant to § 364 that included a lender "enhancement fee").

D.      **The Debtors Have Exercised Their Business Judgment in Entering Into the Interim Financing**

25.     As described in this Motion, after appropriate investigation and analysis, the Debtors' management has concluded that the Interim Financing is the best alternative available in the circumstances of these cases.  Bankruptcy courts routinely defer to a debtor's business judgment on most business decisions, including the decision to borrow money.  See, e.g., Group of Inst. Investors v. Chicago, Mil., St. P. & Pac. Ry., 318 U.S. 523, 550 (1943) (holding that decisions regarding assumption or rejection of leases are left to the business judgment of the debtor); In re Simasko Prod. Co., 47 B.R. 444, 449 (D. Colo. 1985) ("[b]usiness judgments should be left to the board room and not to this Court").  Further, one court has noted that "[m]ore exacting scrutiny [of the debtors' business decisions] would slow the administration of the debtors' estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1311 (5th Cir. 1985).

26.     In general, a bankruptcy court should defer to a debtor in possession's business judgment regarding the need for and the proposed use of funds, unless such decision is arbitrary and capricious.  In re Curlew Valley Assocs., 14 B.R. 506, 511-13 (Bankr. D. Utah 1981); see also In re Trans World Airlines, Inc., 163 B.R. 964, 974 (Bankr. D. Del. 1994) (approving interim loan, receivables facility and asset-based facility based upon prudent business judgment of the debtor). Courts generally will not second-guess a debtor in possession's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of his authority under the Code." Curlew Valley, 14 B.R. at 513-14 (footnotes omitted).

27.     The Debtors have exercised sound business judgment in determining that a postpetition credit facility is appropriate and have satisfied the legal prerequisites for the Interim Financing.  The terms of the Interim Financing are in the best interests of the Debtors' estates. Accordingly, the Debtors should be granted authority to borrow funds from BankAtlantic on the secured, administrative "superpriority" basis described above, pursuant to §§ 364(c) and 364(d) of the Bankruptcy Code, and take the other actions as requested herein

E.     **The Debtors' Request for Use of BankAtlantic's Cash Collateral is Appropriate**

28.     As noted above, the Debtors' use of property of their estates is governed by § 363 of the Bankruptcy Code, which provides in pertinent part that:

> If the business of the debtor is authorized to be operated under § . . . 1108 . . . of this title and unless the court orders otherwise, the [debtor] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing. 11 U.S.C. § 363(c)(1).

29.     A debtor-in-possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with § 363 of the Bankruptcy Code. See 11 U.S.C. § 1107(a).

30.     Pursuant to § 363(c)(2) of the Bankruptcy Code, the Court may authorize the Debtors to use cash collateral as long as the applicable secured creditors consent or are adequately protected.  In re Mellor, 734 F.2d 1396, 1400 (9th Cir. 1984); see also In re McCormick, 354 B.R. 246, 251 (Bankr. C.D. Ill. 2006) (to use the cash collateral of a secured creditor, the debtor must have the consent of the secured creditor or must establish to the Court that the secured creditor's interest in the cash collateral is adequately protected.).  "Cash Collateral" is defined as, "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate and an entity other than the estate have an interest." 11 U.S.C. § 363(a).

31.     The Debtors have an urgent need for the immediate use of BankAtlantic's Cash Collateral pending the Final Hearing on this Motion.  Accordingly, the Debtors seek to use BankAtlantic's Cash Collateral existing on or after the Petition Date.  The Debtors require use of BankAtlantic's Cash Collateral to, among other things, pay present operating expenses, including payroll and vendors, to ensure a continued supply of goods and services essential to the Debtors' continued viability.  Moreover, similar relief has been granted in other recent chapter 11 cases. See, e.g., In re All American Semiconductor, Inc., No. 07-12963 (Bankr. S.D. Fla. May 21, 2007) (authorizing the use of cash collateral in accordance with the terms of the DIP credit documents and the approved budget for Interim Financing); In re Gemini Cargo Logistics, Inc., No. 06-10870 (Bankr. S.D. Fla. Apr. 10, 2006) (same).

F.    **11 U.S.C. 506(c) Waiver**

32.    No administrative claims, including fees and expenses of professionals, shall be assessed against or attributed to BankAtlantic with respect to its interests in the Existing Collateral, Assets, and BankAtlantic Cash Collateral pursuant to the provisions of § 506(c) of the Bankruptcy Code or otherwise. However, the budget, Exhibit "B", approved by BankAtlantic provides for payments of professional fees as specified therein.    Section 506(c) of the Bankruptcy Code allows the estate to surcharge the collateral of a secured creditor to pay the reasonable, necessary costs and expenses of preserving or disposing of such creditor's collateral to the extent of any benefit received.  See 11 U.S.C. § 506(c).  In connection with the provision of debtor-in-possession financing or consenting to a debtor's use of cash collateral, lenders commonly request a waiver of a debtor's ability to surcharge such lender's collateral.  Here, BankAtlantic is lending new money to these estates and allowing the Debtors to use BankAtlantic's Cash Collateral, thereby benefiting the Debtors' estates as a whole.  Further, this Court has authorized similar § 506(c) waivers in other instances.  See, e.g., In re Levitt and Sons, LLC, No. 07-19845 (Bankr. S.D. Fla. Jan. 11 2008); In re All American Semiconductor, Inc., Case No. 07-12963 (Bankr. S.D. Fla. May 21, 2007); In re Gemini Cargo Logistics, Inc., No. 06-10870 (Bankr. S.D. Fla. Apr. 10, 2006).

33.    Paragraph 14 of the proposed Interim Financing Order provides that the automatic stay provisions of § 362 of the Bankruptcy Code are vacated and modified as necessary to allow the Debtors and BankAtlantic, and their agents, to implement the provisions of the Interim Financing Order and Post-Petition Financing Documents as is necessary, including without limitation, to file or record any UCC financing statements, mortgages and other instruments and documents evidencing the security interests and liens granted to BankAtlantic, and to enforce BankAtlantic's security interests and liens, or exercise any other rights or remedies upon the

Debtors' default under the Interim Financing Order or Post-Petition Financing Documents.  The Interim Financing Order further provides that the stay of any such relief under Bankruptcy Rule 4001(a)(2) shall not apply.

34.     Stay modification provisions of this sort are ordinary and usual features of postpetition debtor in possession financing facilities and, in the Debtors' business judgment, are reasonable under the present circumstances.

G.     **Request for Waiver of Stay**

35.     The Debtors further seek a waiver of any stay of the effectiveness of the Interim Financing Order that may be imposed by any applicable Bankruptcy Rule.  As set forth above, the Interim Financing and the use of BankAtlantic's Cash Collateral are essential to prevent potentially irreparable damage to the Debtors' operations and value of its Assets, and, most importantly, its ability to reorganize.  Accordingly, the Debtors submit that ample cause exists to justify a waiver of any stay imposed by the Bankruptcy Rules, to the extent applicable.

H.     **Request for Waiver of Relief Local Rule 9075-1(B)**

36.     Debtors respectfully request waiver of the provisions of Local Rule 9075-1(B) requiring an affirmative statement that a bona fide effort was made to resolve issues raised in this motion, as the relief requested is urgent in nature and does not lend itself to resolution in advance of any hearing.

### VII.   **Request for Final Hearing**

37.     Pursuant to Bankruptcy Rule 4001(b)(2) and 4001(c)(2), the Debtors request that the Court set a date for the Final Hearing that is as soon as practicable, but in no event later than thirty (30) days following the entry of the Interim Financing Order, and fix the time and date prior to the Final Hearing for parties to file objections to this Motion.

## VIII.   Certificate of Necessity and Request for Emergency Preliminary Hearing

38.     The Debtors respectfully request an emergency hearing on this Motion within the time constraints as specified in Local Rule 9013-1 (F) to prevent immediate and irreparable harm that would occur if the Debtors do not have immediate access to the Interim Financing.  The Debtors estimate that the Interim Hearing and Final Hearing will each require approximately 30 minutes.

39.     For the reasons stated throughout this Motion, the preservation, maintenance and value of the Debtors' Assets will be at risk if an expedited preliminary hearing is not granted. Moreover, the Debtors will not be in a position to propose a viable plan of Reorganization without first obtaining the Interim Financing.

40.     No Statutory Committee has been appointed in these Chapter 11 cases. Notice of the motion has been given by overnight mail, hand delivery, facsimile or other electronic means on the following parties, or, if known, their counsel:

      a)  U. S. Trustee, Southern District of Florida;

      b)  each of the Debtors' 20 largest unsecured creditors;

      c)  the prepetition and DIP Lender;

      d)  the Internal Revenue Service; and

      e)  all other known holders, if any, of secured claims against any of the Debtors' assets.

**WHEREFORE**, for the reasons set forth herein, the Debtors respectfully request that the Court enter an Interim Financing Order, substantially in the form attached hereto as Exhibit "A", and a final order (a) authorizing the Debtors to obtain the Interim Financing and granting security interests to BankAtlantic on a secured and super-priority administrative expense basis; (b) authorizing the Debtors' use of BankAtlantic's Cash Collateral; (c) modifying the automatic stay under § 362 of the Bankruptcy Code; (d) providing adequate protection under §§ 361 and

363 of the Bankruptcy Code; (e) approving the form of notice and scheduling a Final Hearing pursuant to Bankruptcy Rule 4001 (f) granting such other and further relief as is just and proper.

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and that I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

Respectfully submitted,

SANDLER & SANDLER
B y M. L. Sandler, P. A.
*Proposed Counsel for Debtors in Possession*
P.O. Box 402727
Miami Beach, FL 33140
Tel 305-379-6655
Fax 786-472-7077


*/s/Martin L. Sandler*
_____
Martin L. Sandler
Florida Bar # 0070370

**EXHIBIT "A"**
**PROPOSED ORDER**


**UNITED STATE BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

In re:                                                          Case No. 10-

PEARL COMPANIES, INC., et al                 Chapter 11 Cases
                                                               ( Joint Administration Pending)

                    Debtors

_____/

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 506**
**(1) APPROVING SECURED POST-PETITION FINANCING,**
**(2) AUTHORIZING USE OF CASH COLLATERAL, (3) GRANTING LIENS AND**
**PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS,**
**(4) MODIFYING AUTOMATIC STAY, AND**
**(5) SETTING FINAL HEARING UNDER FED. R. BANKR. P. 4001**

              **Final Hearing Scheduled for:** _____
              **Place of Final Hearing:**_____
              **Deadline for Objections to Final Order:**    _____ **at** ___

        This case is before the Court on *Debtors' Emergency Agreed Motion for Interim and*

*Final Orders (1) Approving Secured Post-Petition Interim Financing, (2) Authorizing Use of*

*Cash Collateral, (3) Granting Liens and Providing Superpriority Administrative Expense Status,*

*(4) Modifying Automatic Stay, and (5) Setting Final Hearing Under Fed. R. Bankr. P. 4001 and*

*Certificate of Necessity of Request for Emergency Interim Hearing* (**"Motion"**) [CP#. ___] filed

by the Debtors, Pearl Companies, Inc., Pearl Paint Company, Inc., Pearl Artist & Supply Corp.,

Pearl Art & Craft Supplies, Inc., Pearl Artist Supplies of Illinois, Inc., Pearl Art & Supplies of

California, Inc., Pearl Paint of Suffolk County, Inc., Pearl Art & Craft Supplies of

Massachusetts, Inc., Pearl Art Supply Wholesalers, Inc., Pearl Art & Craft Supplies of

Pennsylvania, Inc. (**collectively, "Debtors or Pearl"**).

As stated in the Motion and on the record at the Interim Hearing, the Debtors and BankAtlantic agree to the terms and entry of this Order **("Interim Order")**.  After a preliminary hearing held on April 14, 2010 **("Interim Hearing")**, and based upon (i) the Debtors' and BankAtlantic's  agreement, (ii) the evidence presented at the Interim Hearing, (iii) the record in these cases, and (iv) the Court's oral ruling at the Interim Hearing, the Court finds as follows:

<u>**Findings of Fact**</u>

The Court makes these findings of fact under Bankruptcy Rule 9014.  Any finding of fact constitutes a finding of fact even if it is stated as a conclusion of law, and any conclusion of law constitutes a conclusion of law even if it is stated as a finding of fact.  Unless otherwise defined in this Interim Order, each capitalized term used in this Interim Order shall have the same definition ascribed to such term in the Motion.  If a capitalized term is not defined in either this Interim Order or the Motion, then it has the meaning ascribed to such term in the Bankruptcy Code or Bankruptcy Rules, whichever is applicable.  If there is any direct conflict between the terms of the Motion and this Interim Order, the Interim Order shall control.

A.       <u>**Jurisdiction and Venue:**</u>  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.   The relief provided herein is granted pursuant to §§ 105, 361, 362, 363, 364, 503 and 506 of title 11 of the United States Code, 11 U.S.C. §101, *et seq.* **("Bankruptcy Code")**, and Rules 2002, 4001, 9013 and 9014 of the Federal Rules of Bankruptcy Procedure **("Bankruptcy Rules")**.

B.       <u>**Notice:**</u>   As evidenced by the *Certificates of Service* [CP# ___ ] filed in these cases, Debtors' counsel has provided notice of the Motion and the emergency hearing by U.S. Mail, facsimile or electronically, or such notice was provided by Notice of Electronic Filing

through the Court's CM/ECF system, to, among others, the following: (i) the Office of the United States Trustee for the Southern District of Florida, (ii) all secured creditors, (iii) the twenty largest unsecured creditors, (iv) the Internal Revenue Service, and (v) all parties that have filed an appearance in these cases. The Court finds that such notice, as it relates to the entry of this Interim Order, is sufficient for all purposes under the Bankruptcy Code, Bankruptcy Rules and Local Rules of this Court (**"Local Rules"**), including, without limitation §§ 102(1), 362, 363 and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 6004 and applicable Local Rules .

C.      **<u>Pearls' Bankruptcy Cases</u>:**   On April 9 and 10, 2010 (**"Petition Date"**), the Debtors' filed voluntary petitions in the United States Bankruptcy Court, Southern District of Florida, for relief under Chapter 11 of the Bankruptcy Code.

D.      **<u>Joint Administration</u>:**   A motion for joint administration of the Debtors' Chapter 11 cases is pending before the court for procedural proposes.  The Debtors continue to operate their businesses and manage their Assets as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

E.      **<u>Pre-Petition Loan Documents</u>:**   BankAtlantic is the owner and holder of certain loan documents, including, without limitation, a Security Agreement, UCC Financing Statements, Promissory Note, and other documents (as have been or may be amended, modified, supplemented, restated or replaced from time to time) (**collectively, "Loan Documents"**) that constitute an outstanding loan, as modified, (**"Loan"**) between BankAtlantic, as Lender, and The Pearl Companies, Inc. and its subsidiaries, as Borrowers (**"Borrowers"**).  The original date of the Loan is April 15, 2003 in the original principal amount of the Loan of $5,500,000.00.  In consideration for the Loan, Rosalind Perlmutter and the Robert Perlmutter Revocable Trust

(Perlmutter) executed and delivered to BankAtlantic an Absolute, Unconditional and Continuing Guaranty and a Reaffirmation of Guaranty (as may be amended, modified, supplemented, restated or replaced from time to time) **(collectively, "Guaranty")** for payment of the Loan. The Loan Documents and Guaranty, together with all other agreements, documents, mortgages, notes, deeds, assignments, security instruments and any other documents delivered pursuant thereto or in connection therewith are referred to collectively as the **"Pre-Petition Financing Documents."**

F.    **Pre-Petition Indebtedness**: BankAtlantic contends that as of the Petition Date, the Borrowers and Perlmutter, jointly and severally, owed BankAtlantic at least $2, 212,601.00 **(as may be amended, the "Pre-Petition Indebtedness")**.  The term "Pre-Petition Indebtedness" shall mean and include, without duplication, any and all amounts owing or outstanding under the Pre-Petition Financing Documents, and all interest on, fees and other costs, expenses and charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees and expenses that are chargeable or reimbursable under the applicable provisions of the Pre-Petition Financing Documents) and allowable pursuant to the Bankruptcy Code.

G.    **Pre-Petition Liens**:  Pursuant to the Pre-Petition Financing Documents, the Debtors' and Perlmutter obligations to BankAtlantic are secured by first priority liens and security interests in the tangible and intangible personal property of the Debtors constituting substantially all of the assets owned by the Debtors. **(collectively, "Existing Collateral")**.  The Debtors and Perlmutter have agreed that BankAtlantic's liens and security interests are properly perfected, first-priority, valid, enforceable and unavoidable with respect to the Existing Collateral **("Pre-Petition Liens")**.

H.    **Debtors' Need for Interim Financing**:    An immediate need exists for the Debtors to obtain post-petition financing and use BankAtlantic's Cash Collateral in accordance with BankAtlantic's terms to (i) ) maintain and preserve their Assets, and reduce claims and liabilities connected with their obligations, and (ii) demonstrate to their vendors, suppliers, customers and employees that they have sufficient capital to ensure ongoing operations.  Failing to obtain the Interim Financing and use of BankAtlantic's Cash Collateral will negatively impact the value of the Debtors' Assets and immediately and irreparably harm the Debtors, their estates and creditors.  Further, absent the Interim Financing, the Debtors will be required to terminate their operations to the material detriment of all parties in interest.

I.    **No Other Post-Petition Credit**:    The Debtors are unable to obtain unsecured or other credit for the purpose of operating working capital to fund ongoing operations.  Absent payment of ongoing operational expenses and purchase of inventory will negatively impact the value of the Debtor's assets and impair the interests of all creditors and other parties-in-interest.

J.    **Interim Financing**:    Under the circumstances set forth in this Interim Order, BankAtlantic is willing to advance funds under a revolving line of credit up to a maximum principal amount of $3,100,000.00 inclusive of the pre-petition indebtedness **("Interim Financing")**.    In addition, the Debtors' use of the Interim Financing may include the ability to pay certain costs necessary to (i) preserve and maintain the Debtors' Assets  (ii) pay suppliers, employees, and other creditors, and (iii) pay the Debtors' other critical ongoing post-petition obligations, whether independent, joint, several or otherwise.  The terms of the Interim Financing and Post-Petition Financing Documents are fair, reasonable, and the best available terms under the circumstances and are supported by reasonably equivalent value and consideration.

K.    **Benefit to Debtors' Estates:**    The Debtors and their estates are receiving a substantial and direct benefit from the Interim Financing and use of BankAtlantic's Cash Collateral authorized pursuant to this Interim Order.    The Debtors are receiving reasonably equivalent value in the form of Interim Financing and other rights and benefits being provided and made available pursuant to this Interim Order and the Post-Petition Financing Documents in exchange for the obligations the Debtors are incurring pursuant to this Interim Order and the Post-Petition Financing Documents.    The relief requested in the Motion is necessary, essential, and appropriate for the preservation and maintenance of the Debtors' Assets, and substantially increases the likelihood of the Debtors obtaining additional financing for the funding of a plan of reorganization.

L.    **Debtors' Reasonable Business Judgment:**    The Debtors' decision to obtain the Interim Financing, enter into the Post-Petition Financing Documents, and use BankAtlantic's Cash Collateral is a result of the exercise of sound and reasonable business judgment.    The Debtors advised the Court that no alternative financing is available on any other basis and no better offers, commitments or timely proposals are before the Court.    Given the circumstances of these cases and of the Debtors, the terms of the Post-Petition Financing Documents and this Interim Order, including the use of BankAtlantic's Cash Collateral, are in the best interest of the Debtors' estates. Accordingly, the Debtors are authorized to obtain credit and use BankAtlantic's Cash Collateral under § 364(c)(1) and (2) and 364(d) of the Bankruptcy Code and as provided in this Interim Order.

M.    **Automatic Stay:**  For the reasons stated in the Motion and because of the critical nature of the Debtors' need for the Interim Financing and use of BankAtlantic's Cash Collateral,

"cause" exists under § 362(d) of the Bankruptcy Code for modifying and terminating the automatic stay as set forth in this Interim Order.

   N. **Good Faith and Arms' Length Negotiations:** The Interim Financing, Post-Petition Financing Documents and this Interim Order have been negotiated in good faith and at arms' length between the Debtors and BankAtlantic with the advice of their respective counsel. Any and all loans, advances, funding and other extensions of credit made by BankAtlantic (or use of BankAtlantic's Cash Collateral) to or for the benefit of the Debtors pursuant to the Post-Petition Financing Documents and this Interim Order (without regard to obtaining final approval at the Final Hearing) shall be deemed to have been made in good faith within the meaning of § 364(e) of the Bankruptcy Code. Accordingly, any credit extended or financing provided, and use of cash collateral permitted, pursuant to this Interim Order and/or the Final Order shall be deemed to have been extended or provided in good faith under § 364(e) of the Bankruptcy Code.

   **IT IS THEREFORE ORDERED** as follows:

   1. **Disposition:** The Motion is GRANTED. Any objections that have not been withdrawn or asserted are overruled or deemed waived.

   2. **Approval of Interim Financing and Post-Petition Financing Documents:** The terms and conditions of the Interim Financing are APPROVED on an interim basis as of the Petition Date through the date of the Final Hearing scheduled in paragraph 23 below. The Debtors are authorized to:

     a. Borrow from BankAtlantic an aggregate principal amount not to exceed $3,100,000.00, incur any and all liabilities and obligations under the Post-Petition Financing Documents, and pay all interest, fees, and expenses and other obligations provided under the Post-Petition Financing Documents, including, without limitation, legal fees, up to a maximum of $35,000.00 (solely for fees and costs related to closing the Interim Financing and shall not limit BankAtlantic's right to include all other fees and costs in its debt. In the Event of a Default the limitation is waived) and a fee of 2.00 % of the amount of the Interim Financing,

which shall bear interest at a variable interest rate equal to four hundred (400) basis points above the Prime Rate (as defined herein) in effect on the day of the Advance, to be adjusted daily with any change in said Prime Rate with a floor of 8%  "Prime Rate" shall mean that certain rate of interest announced from time to time by BankAtlantic as its Prime Rate, which rate is purely discretionary and is not necessarily the best or lowest rate charged to borrowing customers of BankAtlantic, and which is currently 2.00%.  BankAtlantic shall not be required to notify Debtors of any changes in the Prime Rate, which shall be reflected solely by the billing thereof to Debtors.  Regardless of the above, said interest rate shall never exceed the maximum rate permitted by applicable law;

      b.      Perform all acts BankAtlantic requests to make, execute, and deliver the Post-Petition Financing Documents and all instruments, agreements, assignments and other documents to implement and satisfy (i) the terms of this Interim Order and the Post-Petition Financing Documents, and (ii) the creation and perfection of the liens described in and provided for by this Interim Order and the Post-Petition Financing Documents and to assure the priority thereof as contemplated in this Interim Order; and

      c.      Satisfy all conditions precedent and perform all obligations in accordance with the terms of the Post-Petition Financing Documents and this Interim Order, including, without limitation, providing DIP operating reports to BankAtlantic, authorizing BankAtlantic to perform audits and investigation of asset values at its discretion and seek approval of the Bankruptcy Court of a Chief Restructuring Officer acceptable to the DIP Lender, such expenses to be added to the DIP Facility and become obligations of the Borrowers and Guarantors. Borrowers further agree to a standstill on any principal and interest payment to parties relisted to Borrower or Guarantors.

**Procedures for Borrowing and Use of Interim Financing:**  The use of the Interim Financing shall be in accordance with the standard procedures utilized by the Borrowers under the terms and conditions of the Prepetition loans and the terms of this Interim Order. The Debtors may use the Interim Financing to (i) preserve and maintain the Debtors' Assets , (ii) pay suppliers, employees, and other creditors, and (iii) pay the Debtors' other critical ongoing post-petition obligations, whether independent, joint, several or otherwise.  BankAtlantic is authorized to pay directly from the Interim Financing, without further Court Order,

      **Maturity of Interim Financing:**  The Interim Financing, plus all accrued interest and charges, matures and shall be paid in full on the earlier of the (i) effective date of a confirmed Chapter 11 Plan of Reorganization for the Debtors' estates; (ii) December 31, 2011; (iii) occurrence of an Event of Default.

3.        **Use of BankAtlantic's Cash Collateral:** The Debtors are AUTHORIZED to use BankAtlantic's Cash Collateral for working capital only to the extent reflected in the budget attached to this Order as Exhibit "A"

4.        **Replacement Liens:** BankAtlantic is granted valid, perfected and enforceable first priority replacement liens upon the exact same Existing Collateral that the Debtors pledged to BankAtlantic pre-petition.

5.        **Post-Petition Liens:** The Debtors are authorized to enter into and execute such notes, mortgages, assignments, and other security documents (**"Post-Petition Financing Documents"**) as may be required by BankAtlantic to accomplish the Interim Financing and security set forth in this Motion and Interim Financing Order.

6.        **Superpriority Administrative Claim:** BankAtlantic is allowed a superpriority administrative expense claim (**"Superpriority Administrative Claim"**) for all of the Debtors' obligations under the Post-Petition Financing Documents, including, but not limited to, payment of all Interim Financing, interest, fees (including professional fees as limited herein) and other charges, with priority under Bankruptcy Code §§ 364(c)(1), 503(b) and 507(b) and absolute priority over all other administrative expense claims and unsecured claims against the Debtors' estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code §§ 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726(b), 1113, and 1114, except for fees due the clerk of the court or the U.S. Trustee pursuant to 28 U.S.C. 1930.  Also, BankAtlantic's Superpriority Administrative Claim shall at all times be senior to the rights of any domestic or foreign subsidiary or affiliate of any Debtor, any successor trustee or estate representative, or any other creditor or party in interest in the Debtors' Chapter

11 Cases or any subsequent chapter 7 case (**"Successor Case(s)"**).  No costs or administrative expenses that have been or may be incurred in these Chapter 11 Cases, in any related proceedings, or in any Successor Case, and no priority claims, are or will be prior to or on a parity with the claims of BankAtlantic against any of the Debtors arising under any of the Post-Petition Financing Documents, except as otherwise provided in this Interim Order.

7.    **No Surcharge:**  The Debtors irrevocably waive and shall not assert any surcharge claim against BankAtlantic under § 506(c) of the Bankruptcy Code, nor support any surcharge claim by another party against BankAtlantic.  No administrative claims, including fees and expenses of professionals, shall be assessed against or attributed to BankAtlantic with respect to its interests in the Existing Collateral, Assets, and BankAtlantic Cash Collateral pursuant to the provisions of § 506(c) of the Bankruptcy Code or otherwise.

8.    **Adequate Protection:**  As adequate protection, BankAtlantic shall receive (i) the Replacement Liens on the Existing Collateral, and (ii) a Superpriority Administrative Claim over all administrative claims and unsecured claims of the Debtors and their estates.

9.    **Payment/No Setoff:**  All of the Debtors' obligations under the Post-Petition Financing Documents shall be due and payable, and shall be paid, as and when provided in the Post-Petition Financing Documents.  In no event shall the Debtors be authorized to offset any amount due or allegedly due or owing by BankAtlantic to any of the Debtors against any of the obligations under the Post-Petition Financing Documents without BankAtlantic's prior written consent, which consent BankAtlantic may grant or deny in its absolute discretion.

10.    **Perfection of Liens and Security Interests/Duty to Cooperate:**  This Interim Order operates to automatically perfect BankAtlantic's liens upon the Existing Collateral and Assets and shall be sufficient and conclusive evidence of the validity, perfection, and priority of

BankAtlantic's liens upon the Existing Collateral , and BankAtlantic shall not be required to file, record or serve any financing statement, mortgage, deed of trust, notice of lien or any similar document or take any other action (including possession of any of the Existing Collateral) in order to validate the perfection of the liens.  If BankAtlantic shall, in its discretion, elect to file, record or serve any such mortgage, deed of trust, UCC-1 financing statement or other notice, or take any other action to validate the perfection of any part of its liens, the Debtors and their officers shall execute any documents or instruments that BankAtlantic shall reasonably request, and all such documents and instruments shall be deemed to have been filed or recorded as of the Petition Date.  BankAtlantic, in its discretion, may file a copy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtors have real or personal property, and in such event, the subject filing or recording officer shall file or record such copy of this Order.

11.    **Debtors' Obligations and Transfers Not Avoidable:**    None of the Debtors' obligations, grants of security interests, liens or superpriority claims or payments or other transfers to BankAtlantic under the Post-Petition Financing Documents or this Interim Order shall be avoidable or recoverable as a fraudulent, ultra vires, unlawful transfer, or any other theory under any applicable law, including without limitation, the Bankruptcy Code.

12.    **Event of Default:**  The events of default include:

a.    Any of the Debtors' cases being converted to cases under Chapter 7 of the Bankruptcy Code, or dismissed,

b.    The appointment of a trustee under §1104 of the Bankruptcy Code; or

c.    The appointment of an examiner with enlarged powers under §1106(b) of the Bankruptcy Code in any of the Chapter 11 Cases; or

d.      Any of the Debtors' failure to duly and timely observe, perform or discharge any obligations or duties imposed upon them by this Interim Financing Order and Post-Petition Financing Documents; or

e.      This Interim Order is modified without the prior written consent of BankAtlantic, or

f.      The Debtors fail to obtain the Final Order approving the Interim Financing in the manner contemplated in this Interim Order following the Final Hearing; or

g.      The filing by the Debtors or Related Entities of any adversary proceeding, motion or action challenging (i) the liens, Interim Financing, or Post-Petition Financing Documents, or (ii) the priority or validity of BankAtlantic's liens and claims as provided in this Interim Order.

h.      Failure to perform under the terms of this Interim Financing Order, failure to conform to the budget, sale of material assets (more than $50,000.00 in value in one sale) without written consent of BankAtlantic.

**In the Event of Default, BankAtlantic is fully authorized, in its sole discretion, to (i) immediately terminate the Interim Financing and Debtors' use of BankAtlantic's Cash Collateral as provided in the Post-Petition Financing Documents and this Interim Order, (ii) demand payment and satisfaction of all obligations under the Post-Petition Financing Documents, (iii) seek to enforce the security interests and liens granted under the Post-Petition Financing Documents and this Interim Order, and (iv) take all other actions and exercise all  other remedies under such documents and applicable law that may be necessary or deemed appropriate by BankAtlantic as if these Chapter 11 Cases or any Successor Case were not pending; (v) seek appointment of a Chief Restructuring Officer; (vi) record the mortgage on the New York property (308 Canal Street, NY, NY). In the Event of Default, the Debtors shall not be authorized to use BankAtlantic's Cash Collateral or any proceeds of any Interim Financing to pay any costs or expenses of administration in these Chapter 11 Cases or in any Successor Case until such time as all of the obligations**

under the Post-Petition Financing Documents are paid, performed and satisfied in full, except for fees due the clerk of the court or the U. S. Trustee pursuant to 28 U. S. C. 1930.

13.    **Relief from Automatic Stay:**    The automatic stay imposed under Bankruptcy Code § 362 is modified and terminated as to the Debtors and BankAtlantic, and their agents, as is necessary to (i) implement the provisions of the Interim Financing Order and Post-Petition Financing Documents, (ii) document the granting of liens, security interests and claims to BankAtlantic as established in this Interim Order, (iii) file or record any UCC financing statements, mortgages and other instruments and documents evidencing the security interests and liens granted to BankAtlantic (should BankAtlantic choose to do so in its sole discretion notwithstanding the automatic perfection of the liens established in this Interim Order), and (iv) enforce BankAtlantic's security interests and liens, or exercise any other rights or remedies upon the Debtors' default under this Interim Order or the Post-Petition Financing Documents.

14.    **Survivability and Binding Effect:**    Without the prior written consent of BankAtlantic, which BankAtlantic may grant or deny in its sole discretion, no reorganization plan, order of this Court or other disposition of the Debtors' Existing Collateral proposed by the Debtors, any insider of any of the Debtors, or any third party shall modify or abrogate any of the rights and benefits afforded BankAtlantic by this Interim Order and/or the Post-Petition Financing Documents without prior written consent of BankAtlantic, which BankAtlantic may grant or deny in its absolute discretion. **The provisions of this Interim Order, the Post-Petition Financing Documents, the Pre-Petition Liens, Replacement Liens and Superpriority Administrative Claims granted to BankAtlantic shall be binding upon the Debtors and their buyers, successors and assigns, including any trustee appointed in these Chapter 11 Cases or any Successor Cases, and all creditors, as provided in Bankruptcy**

**Code § 364(e)**. In the event that these Chapter 11 Cases are dismissed, superseded, substantively consolidated with another chapter 11 case or entity, or the Debtors are merged into any other entity under any plan of reorganization, neither the entry of this Interim Order, the dismissal of these Chapter 11 Cases, nor such consolidation or merger shall affect any of BankAtlantic's rights under this Interim Order and/or the Post-Petition Financing Documents, and all of BankAtlantic's rights and remedies under the Interim Order and/or the Post-Petition Financing Documents shall remain in full force and effect. Any and all appeals and /or stays subsequent to the entry of the Orders approving the DIP Facility shall not nullify the DIP obligations existing prior to such rulings or stays.

15.    **No Additional Liens, Security Interests or Encumbrances:** For as long as any obligations or liabilities remain outstanding under the Interim Financing Documents, the Debtors shall not, directly or indirectly, create, incur, assume or permit to exist any security interest, encumbrance, lien or other security arrangement of any kind, on or with respect to any of its Assets, including the Existing Collateral, or take or fail to take any action which would grant or create a lien or security interest in favor of any person or entity in such Existing Collateral or Assets, in either case, except as expressly agreed to in prior writing by BankAtlantic in its sole discretion and authorized by order of this Court to the extent required by the Bankruptcy Code.

16.    **Effect of Reversal, Modification, Vacation or Stay:** If any provision of this Interim Order is modified, vacated, reversed or stayed by subsequent order of this or any other Court for any reason, such modification, vacation, reversal or stay shall <u>not</u> (i) affect the validity of any obligation, indebtedness, liability, security interest or lien granted or incurred by the Debtors to BankAtlantic prior to the effective date of such modification, vacation, reversal or stay, or (ii) the validity, enforceability or priority of any security interest, lien, priority or right

authorized or created under the original provisions of this Interim Order or pursuant to the Post-Petition Financing Documents.  All loans, advances, use of cash collateral and extensions of credit under the Post-Petition Financing Documents and this Interim Order, the indebtedness resulting from such loans, advances, use of cash collateral, and extensions of credit prior to the effective date of any modification, vacation, reversal or stay of this Interim Order cannot without the prior written consent of BankAtlantic (i) be subordinated, (ii) lose their priority lien or superpriority administrative expense claim status, or (iii) be deprived of the benefit of the status of the liens, security interests and claims granted to BankAtlantic under this Interim Order or the Post-Petition Financing Documents, as a result of any subsequent order in these Chapter 11 Cases, or any Successor Case, of any of the Debtors.

17.    **Injunction Against Foreclosure of Junior Liens/Stay Relief as to Senior Liens:**  Unless otherwise permitted by this Interim Order or by further order of this Court, until all obligations under the Post-Petition Financing Documents are indefeasibly paid and satisfied in full and without further order of the Court, no party shall foreclose or otherwise seek to enforce any lien junior in priority to those granted by this Interim Order or other right such party may have in and to any of the Existing Collateral or the Debtors' Assets, and all such actions are enjoined.

18.    **A release, waiver, or limitation on any claim or other cause of action belonging to the estate or the Debtors, including any modification of the statute of limitations or other deadline to commence an action:**  Subject to objections as allowed by the Interim Financing Order, and subject to all other terms and conditions of the Interim Financing Order, the Debtors agree to (i) release and discharge BankAtlantic from any and all claims and causes of action arising out of, based upon or related to the Pre-Petition Financing Documents,

Interim Financing, and all other instruments and documents executed or delivered in connection therewith, (ii) waive any and all claims, defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability, and avoidability  (under §§ 510, 544, 545, 547, 548, 549, 550, 552 or 553 of the Bankruptcy Code or otherwise) of the obligations or the security interests, mortgages, deeds, and liens granted to secure the obligations, and (iii) agree, without further Court order, to the allowance of the claims of BankAtlantic as secured claims in an amount not less than the value of the Existing Collateral on the Petition Date pursuant to §§ 502 and 506 of the Bankruptcy Code.

19.    **Miscellaneous:**

a.    **Amendments or Modifications:**  The Debtors and BankAtlantic mutually may amend or waive any provision of the Interim Financing and Post-Petition Financing Documents, provided that such amendment or waiver, in the judgment of both the Debtors and BankAtlantic, is either nonprejudicial to the rights of third parties or is not material.  If, however, any waiver, modification or amendment constitutes a material change to the Post-Petition Financing Documents (a "material change" meaning, without limitation, a change that operates to increase the amount of the Interim Financing or the rate of interest, add additional specific events of default, alter the discretionary nature of the Interim Financing, or enlarge the nature and extent of remedies available to BankAtlantic in the event of a default), such waiver, modification or amendment must be set forth in writing, signed by the Debtors and BankAtlantic and approved by this Court upon proper notice and opportunity for hearing.

b.    **No Duty to Extend Term/No Admissions or Waiver:**  . Nothing in this Interim Order shall be deemed to be a waiver by BankAtlantic of its rights to request any

other relief or additional and further protection of its interests in any of the Debtors'
Assets or property of their estates, to move for relief from the automatic stay, to seek the
appointment of a trustee or examiner in these Chapter 11 Cases or any Successor Case or
the dismissal of these Chapter 11 Cases or any Successor Case, or to request any other
relief in these cases as may be allowed by this Interim Order, the Post-Petition Financing
Documents, or any provision of the Bankruptcy Code, Bankruptcy Rules or Local Rules
of this Court, nor shall anything in this Interim Order or in any of the Post-Petition
Financing Documents constitute an admission by BankAtlantic of the quantity, quality or
value of any of its collateral or constitute a finding of adequate protection with respect to
the interests of BankAtlantic in its collateral.  BankAtlantic shall be deemed to have
reserved all rights to assert entitlement to the protections and benefits of § 507(b) of the
Bankruptcy Code in connection with any use, sale or other disposition of any of its
collateral, to the extent that the protection afforded by this Interim Order proves to be
inadequate, subject to the priorities established herein.  BankAtlantic's failure to seek
relief or otherwise exercise its rights and remedies under the Post-Petition Financing
Documents or this Interim Order shall not constitute a waiver of any of BankAtlantic's
rights under this Interim Order or the Post-Petition Financing Documents.

       c.     **Marshalling of Assets and Liens:**  In no event shall BankAtlantic, or its
agents or assigns, be subject to the equitable doctrine of "marshalling" or any similar
doctrine with respect to the Existing Collateral or the Debtors' Assets or liens
encumbering same.

       d.     **Remedies Cumulative:**  The rights, remedies, powers and privileges
conferred upon BankAtlantic pursuant to this Interim Order shall be in addition to and

cumulative with those contained in the Post-Petition Financing Documents. Nothing in this Interim Order shall limit, restrict, eliminate or modify any rights or remedies provided to BankAtlantic under the Post-Petition Financing Documents.

e.  **Scrivener's Error:**  Notwithstanding the existence of any scrivener's error in any Pre-Petition Financing Document, Post-Petition Financing Document, this Interim Order, or in the recording, filing or service of such documents, the documents shall be deemed binding upon the parties, automatically perfected, and duly recorded, filed and served for all intents and purposes.

f.  **Notice of Interim Order:**  On or before _____, the Debtors shall cause to be served by U.S. mail copies of this Interim Order on all interested parties (except those parties who are registered and will receive notices electronically in these cases), including (i) the Office of the United States Trustee for the Southern District of Florida; (ii) all secured creditors, (iii) the twenty largest unsecured creditors, (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission; and (vi) all parties that have filed an appearance in these cases. Such notice is sufficient for all purposes under the Bankruptcy Code, Bankruptcy Rules and Local Rules of this Court, including, without limitation §§ 102(1), 362, 363 and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and Local Rules 7005-1 and 7005-3.

g.  **Effectiveness:**  The terms of this Interim Order and the Post-Petition Financing Documents and any actions pursuant thereto, including, but not limited to, the liens and claims granted by this Interim Order, shall survive the entry of any order: (i) dismissing any or all of the Debtors' Chapter 11 Cases; (ii) converting any or all of the Debtors' Chapter 11 Cases to any other Chapter under the Bankruptcy Code; (iii)

withdrawing of the references of any or all of the Debtors' Chapter 11 Cases from the Bankruptcy Court; and (iv) abstention from handling or retaining of jurisdiction of any or all of the Debtors' Chapter 11 Cases in the Bankruptcy Court.  Further, the stay provisions of Bankruptcy Rules 4001(a)(3) and 6004(h), or any other stay provisions of the Bankruptcy Code, Bankruptcy Rules, or Local Rules of this Court, shall not apply.  This Interim Order shall be effective immediately upon entry on the Court's docket and any actions taken pursuant thereto shall survive entry of, and shall govern with respect to any conflict with any order that is or may be entered confirming any plan of reorganization, dismissing these Chapter 11 Cases, or converting these Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code.

h.    **Interim Order Controls**:  In the event of any inconsistency between the terms and conditions of the Motion, Post-Petition Financing Documents, or this Interim Order, the provisions of this Interim Order shall govern and control.

20.    **Objections to Interim Order**:  Any party in interest shall have the right to object to the provisions of this Interim Order and the entry of a Final Order provided that a written statement setting forth the basis for such objection is filed with the Court and concurrently served upon Debtors' counsel, BankAtlantic's counsel and the U.S. Trustee's Office, so that it is received no later than ten (10) business days before the date scheduled for the Final Hearing in paragraph 23 below.  Unless an objecting party shall appear before the Court at the Final Hearing to assert the basis for its objection, such objection shall be deemed to have been waived and abandoned.

21.     The liens and security interests granted by the Order are subject to a carve out of such amounts as required for payment of fees due the clerk of the court or the U. S. Trustee pursuant to 11 U. S.C. 1930.

22.     **Final Hearing:**   The Court will conduct a Final Hearing on the Motion on _____ at _____, at U.S. Bankruptcy Court, 299 E Broward Boulevard, Fort Lauderdale, Florida 33301.  If no objection to the Motion or this Interim Order is filed timely and asserted at the Final Hearing, then this Interim Order shall continue in effect in accordance with its terms subject to such modifications as the Court may make in the Final Order following the Final Hearing, and that are acceptable to BankAtlantic.  If any or all of the provisions of this Interim Order are reversed, modified, vacated or stayed as the result of any objection filed timely and asserted at the Final Hearing, then, without limiting any provisions hereof, Debtors' obligations hereunder and under the Post-Petition Financing Documents incurred prior to the effective date of such reversal, modification, vacation or stay shall be governed in all respects by the original provisions of this Interim Order, and BankAtlantic shall be entitled to the protections afforded under § 364(e) of the Bankruptcy Code and to all the rights, remedies, privileges and benefits, including, without limitation, the security interests, liens and priorities, granted herein and pursuant to the Post-Petition Financing Documents with respect to all such obligations.

23.     **Retention of Jurisdiction:**  The Court retains jurisdiction to enforce the terms of this Order and to determine the Related Entities' obligations based on their allocated expenses, if any, from the Interim Financing.

*###*

Submitted by:
Martin L. Sandler, Florida Bar No.: 0070370

SANDLER & SANDLER By M.L. Sandler, P.A.
*Counsel for Debtors*
P.O. Box 402727, Miami Beach, FL 33140
T: 305-379-6655 / F: 786-472-7077
E: martin@sandler-sandler.com

Copies furnished to: Martin L. Sandler, Esq.

Attorney Sandler shall serve a copy of the signed order upon receipt on all parties of record as limited by the Order Limiting Notice entered in these cases and file with the court a certificate of service conforming with Local Rule 2002-1 (F)