**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

In re:                                                          **CASE NO. 10-19336-BKC-JKO**

PEARL COMPANIES, INC., *et al,* [1]                        **CHAPTER 11 CASES**
                                                           (Jointly Administered)

      Debtors.
_____/

## DEBTORS' DISCLOSURE STATEMENT

     The Debtors, Pearl Companies, Inc. *et al* (Debtors or Pearl), file this Disclosure Statement in accordance with the provisions of 11 U.S.C. § 1125.

     **No representations concerning the Debtors, its future business operations, the value of its property or the value of any benefits offered to holders of claims or interest in connection with the Plan are authorized other than as set forth in this Disclosure Statement. Any representations or inducements made to secure acceptance of the Plan which are other than as contained in this Disclosure Statement should not be relied upon by a creditor or interest holder. Any such additional representations and inducements should be reported to counsel for the Debtor, who in turn, shall deliver such information to the U.S. Trustee for such actions as may be deemed appropriate. The information contained in this Disclosure Statement has not been subject to certified audit and, except for financial projections, is based to a large extent on information maintained and collected by the Debtor. The books and records of the Debtors are not audited, but are kept in the ordinary course of the Debtor's business.**

     **You are urged to read this Disclosure Statement carefully in order to obtain adequate information to enable you to decide whether to accept or reject the Plan**.

---

[1]   The Debtors, the last four digits of their tax identification numbers, and case numbers are as follows:  (i) Pearl Companies, Inc. (5024), Case No. 10-19336-JKO; (ii) Pearl Artist and Craft Supply Corp. (7012), Case No. 10-19358-JKO; (iii) Pearl Art & Craft Supplies of California, Inc. (6451), Case No. 10-19359; (iv) Pearl Art & Craft Supplies of Massachusetts, Inc. (0803), Case No. 10-19362; (v) Pearl Art & Craft Supplies, Inc. (1413) , Case No. 10-19363; (vi) Pearl Art Supply Wholesalers, Inc. (7544) , Case No. 10-19364; (vii) Pearl Artist Supplies of Illinois, Inc. (2396) , Case No. 10-19365; (viii) Pearl Paint Company, Inc. (9970) , Case No. 10-19366; (ix) Pearl Paint of Suffolk County, Inc. (0996) , Case No. 10-19369; and (x) Pearl Art & Craft Supplies of Pennsylvania, Inc. (5774) , Case No. 10-19371.  *See* 11 U.S.C. 342(c)(1).

The Plan submitted for creditor approval by the Debtors has been filed after negotiations with the Official Creditors Committee did not result in agreement on the terms of a plan. The Debtors submit this plan to creditors with provisions for funding of the Plan. It provides for provisions concerning performance of its terms and the consequences of default.

## I.      INTRODUCTION – NATURE, HISTORY AND STRUCTURE OF THE BUSINESS

### HISTORY OF THE BUSINESS

The origins of the Pearl organization date to approximately 1957 when, upon the death of his father, Robert Perlmutter assumed management and ownership of a small house paint store on Chamber Street in New York City, started by his father in 1930. Robert knew the paint business having worked in his father's store since childhood. Left with debt and no source of income Robert took over the store to provide a source of income for his widowed mother.

After stabilizing the business, with a desire to build the business to a larger scale, he attempted to change the product mix by adding various house and home décor products, none of which resulted in great success.  Located in SOHO where a plethora of artists resided and had studios it dawned on him that perhaps art supplies would be a good choice to expand the business.

After investing his last funds in art supplies there was no great response from the artist community. Perceiving this, he began to reduce prices in an effort to increase sales. The initial reductions were not particularly productive but as he attempted to recoup his investment by lowering prices further customers began to come in and sales escalated. As artists came in he took advantage of their presence by developing relationships to ascertain their needs and began to fill the store with specialty quality products. In doing so, he pursued terms directly with suppliers rather than distributors.

Prior to this new business model in the artist supply business the industry was essentially fragmented in small price fixed operations with a limited spectrum of product. This was a new concept and slowly artists from the tri-county area began to patronize the store to buy the wide selection of specialized artist and craft supplies. The niche created by the new business model provided the widest and deepest selection of day to day and otherwise unavailable supplies at unbeatable prices. As business expanded stores were opened in Long Island and New Jersey, eventually expanding to twenty-three locations around the country and the addition of a mail order business.

Beginning in the fall of 2006 Pearl management decided to hire an Executive Vice-President, Keith Serra to manage the business.  Among the responsibilities of the Executive Vice-President was

2

supervision of personnel and inventory purchasing, budgets, relationships with vendors and banking. His management resulted in ever increasing losses. Although there had been a decline in business in 2006, the company sales had stabilized. Employed by Pearl in the fall of 2006, under the management by the Executive Vice the business began a rapid decline with losses being incurred in 2007 (lessened by an insurance recovery); greater losses in 2008 (again lessened by a large insurance recovery) and then an extremely large loss in 2009. These unsustainable losses wiped out over 40 years of profits resulting in the necessity to close twelve stores and return to a core operation of stores in New York City, Paramus, New Jersey, Ft. Lauderdale and Miami, Florida and Los Angeles, California.

Notwithstanding the losses and under the umbrella of the pending Chapter 11 case, Pearl remains the leader in Artist supplies, as it is probably the only retail supplier of the very unusual out of the ordinary items at competitive prices. Pearl provides the availability of true fine artist, student and professional art supplies. Unlike other stores in the industry, Pearl's carries unique items that chains and mass marketers do not carry. Pearl is one of the only retailers in the industry that carries its own private label together with a full selection of branded merchandise. Many of these items had been removed from the company's inventory since the intuitive "artist" touch was removed by the no longer employed Executive Vice-President.

## STRUCTURE OF THE BUSINESS

Pearl Companies, Inc. is the parent company of the Pearl organization. Each of the retail stores was operated by one of the various corporate entities that are among the corporations filing Chapter 11 petitions. Historically, some of the stores were authorized to purchase inventory specific to their needs within the confines of budgets and management approval. However, all disbursements were made by Pearl Artist & Craft Supply Corp. (PACSC). Daily receipts were and are swept into the operating bank account maintained by PACSC with BankAtlantic in Ft. Lauderdale, Florida.

PACSC not only operated the stores in Ft. Lauderdale, Miami, and Tampa, Florida and Atlanta, Georgia, but also operated as the corporate headquarters and controlled all sales deposits from the retail operations. Upon filing the Chapter 11 petitions the system of permitting retail store purchase of inventory was changed and all inventory purchases are now made through central purchasing. The retail stores could not make disbursements direct to vendors or pay other operating expenses. All disbursements were and are made through PACSC that also paid employee payroll, rents, all operating expenses and vendor invoices.

## THE BANKRUPTCY CASE

This bankruptcy case was commenced on April 9 and 10 of 2010 by the filing of petitions on

behalf of Pearl Companies, Inc. and its various subsidiaries (Pearl). The case was filed after Pearl suffered substantial losses in it operations during 2007, 2008 and 2009. Prior to the Chapter 11 case being filed, the Debtors reviewed operating results in a number of its stores and decided to close those stores that were not operating profitably and to consolidate operations in those stores that were profitable. This resulted in the closing of all but five stores that continue to operate in Miami and Ft. Lauderdale, Florida; New York, New York,;Paramus, New Jersey and Los Angeles, California. The Direct Mail business presently operates from the Wilton Manors warehouse and the Ft. Lauderdale store.

Since the company had been in business for many years and the owner felt confident that it could be profitable again, based on that belief and on a revised business plan the principals concluded that the company was worth more by continuing under their management and financial support than if the company were liquidated. It was their firm belief that in the event of liquidation nothing would be available for distribution to the unsecured creditors because of the priority and secured claims. BankAtlantic holds a lien against all of Pearl's assets. Having invested substantial sums in the business over the years the owner concluded it was best to pursue reorganization for the benefit of creditors and to preserve potential recovery of their substantial investment (The principals are owed more than $2,875,000.00 for loans made to the company over many years prior to the bankruptcy).

During the Chapter 11 case management has stabilized the company operations, substantially reduced overhead and operating expenses by reduction of personnel and other operating expense and has begun to restock the stores in order to return inventory to an appropriate level and mix of products. Rather than eliminate additional personnel, salaries of all retained employees have been reduced by 5%, including compensation of the owner. The remaining core of personnel now operates the business on a more efficient basis.

During the Chapter 11 proceedings, the Debtors commenced bargaining with the Union concerning its collective bargaining agreement for personnel in the New York City store. That bargaining has not concluded. Pearl has pursued adjustment in the cost of its lease obligations in the stores that remain open. Details of these negotiations will be discussed in a subsequent portion of this Disclosure Statement.

During the proceedings Pearl has eliminated substantially all of the employees previously working in its frame custom framing and assembly operation. Previously operated by 20 employees, the business is now operated by two employees.

Pearl has continued operations under difficult circumstances as vendors have required cash in advance for purchases. Despite this burden and the lack of normal discounts and credit terms Pearl

has enjoyed a good back to school business. Its operations and revenues are increasing, despite the general state of the economy.

## THE DEBTORS' BUSINESS PLAN

Pearl has put in place as part of its business plan substantial further reductions in operating costs and a contemplated expansion of its inventory base. Many of these reductions are reflected in present lease rental reductions for its retail stores, operating personnel and other cost cutting measures. Among important parts of the business plan are the following:

1.      Owner management will take a further reduction in compensation, including certain benefits preciously received. These reductions are reflected the revenue and expense projections supporting the proposed reorganization plan.

2.      Elimination of the expense associated with the Miami warehouse formerly used for inventory storage received in bulk from suppliers before distribution to the retail stores. With the downsizing that has occurred there is no longer a need for this facility.

3.      Modification of the lease for the Wilton Manors warehouse. This facility is used as a downsized warehouse for storage of inventory for distribution to the stores as well as inventory for the Direct Marketing Department. It is used as a manufacturing facility for frames and custom framing.

4.      Modification of the lease rentals in the Ft Lauderdale, Miami, Los Angeles and the New York stores.

5.      Termination of the lease in the Paramus, New Jersey store on March 1, 2011 and move to another location at market rent.

6.      Modernizing the point of sale and accounting system for greater control and efficiency.

7.      Expanded promotion of the Direct Marketing Division.

8.      Reduction in costs related to health insurance.

## II.    SUMMARY OF OPERATIONS SINCE FILING CHAPTER 11

Since the filing of the Chapter 11 petitions, the Debtors have operated as a Debtor-in-Possession and have continued business under the jurisdiction of the Bankruptcy Court.  As Debtors-in-Possession the Debtors file monthly financial reports with the Court. These reports are submitted on a cash basis and demonstrate positive results. Post-petition debts are current. Attached as Exhibit "A" are copies of the summary page of the last three Debtor-in-Possession Reports filed with the Court.

5

Since the petition filing the Debtors have stabilized the business and reduced overhead expenses. More tightly controlled operations and reduced overhead with fewer stores in operation, the level of sales to reach profitability is lower. This ties in with the new business model.

## III.    ASSETS AND LIABILITIES

The Debtor's assets and liabilities are substantially as disclosed in the bankruptcy schedules, as filed and amended with the Court. The schedules are available in the Court file or will be provided to any creditor who in writing requests a copy thereof.  Nominal costs of reproduction and mailing will be charged to requesting parties.  A summary of the assets and liabilities as of the Petition Date is attached as Exhibit "B".  This schedule presents the assets and liabilities on a consolidated basis and reflects the assets and liabilities according to the books and records of Pearl.  The assets and liabilities included in this Disclosure Statement are those for Pearl Companies, Inc., Pearl Paint Company, Inc., Pearl Artist & Craft Supply Corp. and Pearl of California, Inc. These are the only entities that will be subject to the Reorganization Plan as surviving operating companies. The other companies filed in connection with these Chapter 11 proceedings, are not part of the Reorganization Plan and will be converted to Chapter 7 liquidating cases under the Plan of Reorganization.

The liabilities of the Debtors also include pre-petition debts owed to the principals of the Debtor. They are considered insiders and will be treated differently under the Plan as more fully described in this Disclosure Statement. Creditors are referred to Paragraph IV of this Disclosure Statement for additional information regarding the treatment of insider debts.

## IV.    SUMMARY OF PLAN OF REORGANIZATION AND MEANS FOR IMPLEMENTATION OF PLAN

The Plan which accompanies this Disclosure Statement sets forth with particularity the manner in which all claims will be paid.  The Debtors are the Proponents of the Plan and the following summarizes the terms and conditions of the Plan.

### A.    Classification and Treatment of Pre-petition Claims Against the Debtors' Estates and Equity Security Interests

This Plan divides the respective creditors and equity security interests of the Debtors into respective classes, the classification and treatment of which are described herein.  The claims against the Debtors and Equity Security Interests are divided into five classes.

**Class 1:**    Consists of the claims of allowed unsecured creditors exclusive of insiders with allowed claims of $3,000.00 or less or who agree to reduce their claims to $3,000 and be treated for payment as part of this class. Creditors in this class are to be paid an amount equal to twenty percent (20%) of the allowed amount of their claim in full settlement of their claims. Payment to

6

creditors holding claims in this Class I will be paid on the following terms: five percent (5%) on the Effective Date. The remaining deferred balance will be paid in four (4) consecutive equal quarterly payments of five percent (5%) of their allowed claim commencing ninety (90) days after the Effective Date.  These claims are impaired

**Class II:**      Consists of the claims of allowed unsecured creditors, exclusive of insiders, with allowed claims in excess of $3,000.00 that have not elected to be treated as a Class I claim. Class II claims shall be paid an amount equal to twenty-percent (20%) of the allowed amount of each claim as follows:

| | |
|---|---|
| Effective Date | 2.00% |
| May 1, 2011 | 1.00% |
| October 1, 2011 | 1.00% |
| January 15, 2012 | 1.00% |
| May 1, 2012 | 1.25% |
| October 1, 2012 | 1.25% |
| January 15, 2013 | 1.25% |
| May 1, 2013 | 1.25% |
| October 1, 2013 | 1.25% |
| January 15, 2014 | 1.25% |
| May 1, 2014 | 1.50% |
| October 1, 2014 | 1.50% |
| January 15, 2015 | 1.50% |
| May 1, 2015 | 1.50% |
| October 1, 2015 | 1.50% |
| Total | 20.00% |

These claims are impaired.

**Class III:**      Consists of holders of gift cards issued by Pearl. Creditors in this Class shall receive the full amount of the unused portion of the gift card as a credit against purchases from the Debtors. These claims are not impaired.

**Class IV:**      Consists of the unsecured claims of Perlmutter Management of Florida, Inc. and Rosalind Perlmutter. There will be no distributions to creditors in this Class. These claims will be subordinated to the claims of all other creditors until all payments required to be made under the terms of this plan shall have been fully paid. These claims are impaired.

**Class V:**      Consists of the equity security holder of the common stock of the Debtors. The common shares of Pearl Paint Company, Inc., Pearl Artist & Craft Supply Corp. and Pearl Art & Craft Supply of California, Inc. are each owned by Pearl Companies, Inc. All shares of Pearl Companies, Inc. are owned by the Robert Perlmutter Trust. These claims are impaired.

B.    **Payment of Priority Claims**

Claims in this category are entitled to priority of payment over general unsecured creditors pursuant to the provisions of § 507 of the Bankruptcy Code. The following describes the amount and treatment of all outstanding priority claims owed by the Debtor:

(a)    Priority Wage claims total approximately $63,000.00. They will be paid in four equal monthly installments. This Class consists of employee severance claims that are granted priority by provisions of § 507(a)(4) of the Bankruptcy Code. These claimants will receive payment in full as follows: twenty-five (25%) of the amount of the allowed claim on the Effective Date, (the First Payment); twenty-five (25%) thirty (30) days after the First Payment (the Second Payment); twenty-five (25%) thirty (30) days after the Second Payment (the Third Payment); and twenty-five (25%) thirty (30) days after the Third Payment (the Fourth Payment).

(b)    Priority Tax Liabilities total approximately $100,000.00.  The tax liabilities represent unpaid sales tax obligations on the date the Bankruptcy petitions were filed. The Debtors will pay any priority tax claims in installments payable ten percent (10%) of the amount due on the Effective Date and the balance in twelve (12) equal monthly payments together with interest at the lawful interest rate as payment in full. The first monthly installment shall be paid thirty (30) days after the Effective Date.

C.    **Payment of secured claims**

The Debtors are party to a revolving loan account with BankAtlantic. This loan account has a present balance of approximately $3,000,000.00 with a cap of $3,100,000.00. The balance owed changes from day to day based on reductions from deposits and advances for operating expenses and purchase of inventory. BankAtlantic has a security interest in all assets of the Debtors, including accounts receivable, personal property, inventory and the proceeds of inventory or equipment sales. The financing agreement expires in November of 2011.  It is reasonably anticipated that the Reorganized Debtors will be able to negotiate continuation of the financing agreement for the duration of the repayment term to creditors.

In addition, the Debtors have financed insurance premiums for payment of insurance coverage.  These payments are included within the operating budget of the Debtors. It is anticipated that similar amounts and terms will be required when the current policies expire. These amounts are included in the Debtors' projections of income and expense.

D.    **Payment of Post-Petition Administrative Claims**

All administrative claims, as allowed and ordered by the Bankruptcy Court, including fees payable pursuant to § 1930 of Title 28, U.S.C., shall be satisfied by payments in cash in full to

the holders of such claims on the Effective Date except to the extent the holders of such claims have agreed to different treatment or have been earlier paid, and except for unpaid administrative claims which were incurred by the Debtors in the ordinary course of business. Unpaid administrative claims which were incurred by the Debtors in the ordinary course of business shall be paid the allowed amount of such claims by the Reorganized Debtors in the ordinary course of its business as such claims become due.

It is estimated that the cash amount required to be deposited for confirmation of the Plan is approximately $300,000.00. A capital contribution of $300,000.00 will be provided by the Debtors' shareholder in consideration for all of the newly issued common stock of the Pearl Companies, Inc.

Post confirmation of the Plan the Debtors will pay all quarterly fees due the United States Trustee as required by law.

> **D.**    **Means for Execution and Implementation of the Plan.**

The Plan will be funded in its entirety by the Debtors and principals (insiders) of the Debtors through available funds and future revenue.

All distributions will be mailed to creditors at the address stated in the Debtors' Schedules of Liabilities or as stated in a properly filed Proof of Claim. In the event the claim is disputed, the dispute will be resolved either by agreement or as a result of a court hearing and ruling. Neither the Debtors, any disbursing agent, nor any professional retained by them will have any obligation to locate creditors whose distribution or notices were properly mailed but nevertheless returned. However, the Debtors will make a reasonable effort to locate such creditors. Any creditor who fails to claim its distribution due under the Plan within 180 days after a distribution has been delivered will be deemed to have no further interest in that distribution or any further distributions under the Plan. A list of the unclaimed funds or distributions that have been returned by the post office shall be supplied to counsel for the Creditors Committee within 100 days of the date of distribution. All unclaimed distributions will be retained by the Reorganized Debtor.

The claims of professionals acting on behalf of the Creditors Committee, or the Debtors, including Debtors' counsel and accountants for reimbursement of fees and expenses will be as awarded by the court after application and hearing and will be paid in cash on confirmation of the Plan of Reorganization, or on such terms as otherwise agreed by the parties. It is estimated that the remaining professional fees due to counsel for the respective parties will be approximately $100,000.00 plus out of pocket costs. Cost reimbursement requests by professionals will be in compliance with the guidelines of the U. S. Trustee and this court.

The Debtors and the Reorganized Debtors retain the option of setting off against any claim, and any distribution made pursuant to the Plan in respect to such claim, a claim of any nature whatsoever, that the Debtors or the Reorganized Debtors have against the holder of such claim. However, neither the failure to do so nor the allowance of any claim under the Plan constitutes a waiver or release by the Debtors or the Reorganized Debtors of any claim that the Debtors or the Reorganized Debtors may have against the holder of such claim.

As of the Confirmation Date all executory contracts and unexpired leases of the Debtor's estate will be assumed, except those rejected by the Debtors prior to Confirmation of the Plan. The Debtors project that there will be rejection claims totaling approximately $1,565,000.00 that will be included as Class II claims.  Attached, as Exhibit "C", is a schedule of all executory contracts describing the parties and the terms of these agreements that will be assumed by the Reorganized Debtors.

Pearl does not maintain an independent record of the holder of each gift card. In order to advise creditors in this Class of the provisions of this Plan the Debtor will place advertisements containing information related to their claims and treatment in newspapers of general circulation in the cities where Pearl has operated. It is estimated that these claims total approximately $1,000,000.00.

### E.   Confirmation Procedure.

Each impaired class of claims or interests is entitled to vote separately to accept or reject the Plan.   The votes of each class are tallied separately to determine if there has been acceptance of the Plan. For the court to confirm the Plan it is necessary that a majority of creditors in number and two-thirds in amount of each class of creditors who cast a ballot regarding acceptance or rejection of the Plan affirmatively vote in favor of the Plan. Under those circumstances the Plan will be deemed to have been accepted to the advantage of a group of creditors so long as those creditors in such class have a reasonable and logical connection with each other. The Debtors believe that the classification of claims is reasonable and that there is a logical connection among the creditors in each class.

### V.   FINANCIAL INFORMATION AND LIQUIDATION ANALYSIS OF REORGANIZED DEBTOR

This Plan of Reorganization is proffered in the context of the financial information contained in the Debtors' Schedules and as contained in relevant portions of the Debtors' three most recent Debtor in Possession Operating Reports filed with the Court regarding the Debtors' current operations. The summaries through September 2010 are attached as Composite Exhibit "A". These

Reports also reflect information regarding the Debtors operations (revenue and expense) from the date of filing of this Chapter 11 case.  Attached as Exhibit "D" are projections of revenue and expense for a sixty (60) month period which spans the term of the deferred payments under the plan. The projections also reflect assumptions and adjustment to expenses that are reflected in the projections. Included in the projections is the assumption that there will be minimal interruption of revenue in the Paramus location as the lease in the present location will terminate on March 1, 2011. The Debtors believe they will be able to move to another location at market rent with minimal disruption of operations and revenue. These projections are stated on a monthly and annual basis and should be reviewed by creditors in each Class as they indicate the revenue and expense of the Debtors over the projected payment terms for creditors.  The Debtors believes that although certain months reflect a smaller cash flow, carryover positive cash flow from preceding months together with the infusion of new capital will be more than sufficient to make the required payments during those months.

### A.     Financial Information.

Financial information hereinafter presented is to be considered in the context of the Debtor's industry, which has been fully described in Section I of this Disclosure Statement.  This business is affected by any economic trends which affect the retail consumer industry.

### B.     Liquidation Analysis.

The Debtors has examined the claims in this case in order to determine the amount of creditor claims in each class. It is estimated that Class I creditors will total approximately $153,000.00. However, the Debtors have reserved the right to object to certain scheduled or filed claims where the Debtors believe that there is either no debt due or that the amounts are in dispute. Since the legal rights of Class I claims will not be paid in full and since the time of payment is deferred, all of the Class I claims are impaired. Consequently all Class I claims are entitled to vote on the Plan. Class II claims will not be paid in full and are entitled to vote on the Plan. Class III claims shall be paid in full. These claims represent bearer claims against the Debtors and are not impaired. Class IV claims are claims held by insiders and are not entitled to vote for or against the Plan nor will they receive any distribution under the Plan. Class V claims are the holders of the common stock of the Debtors and will receive no distribution under the Plan. The following liquidation analysis should be reviewed carefully by Class I and Class II creditors as it is their vote that will determine acceptance or rejection of the proposed Plan.

In the event of liquidation and the appointment of a Trustee, after payment of all secured claims against the estate, claims will be paid in the following order of priority:  (a) cost of

administration, including Trustee's fees, fees for counsel and accountant for Trustee, court costs and fees for Debtors' Chapter 11 counsel; costs and fees for counsel to the Petitioning Creditors; costs and fees to counsel and accountants for the Official Creditors Committee. Although insider claims do not participate in the proposed Plan payments, in the event of liquidation those creditors will participate in the same manner as other unsecured creditors unless the court determines that the claims should be subordinated and not entitled to participate in distribution. Absent an agreed subordination the Debtors are of the belief that subordination of those claims is not likely.

The Debtors have a limited number of executory contracts as described in Exhibit "C". If the Debtors are liquidated the Trustee will most likely reject some or all of those contracts resulting in a "rejection damage claim" being filed by those creditors. This "rejection" claim will be considered an unsecured claim and also participate in any distribution after liquidation of the Debtor's assets. In the event of liquidation the amount owed to unsecured creditors that would participate in any possible distribution will be substantially increased as a result of the inclusion of insider claims and "rejection" claims, thereby reducing the percentage distribution that unsecured creditors would receive.

All of the foregoing charges in the event of a Chapter 7 would be paid from the net proceeds of Liquidation, that is, after BankAtlantic has been paid (BankAtlantic is a secured creditor with a lien on all assets of the Debtors), all expenses of liquidation have been paid and in particular, BankAtlantic with a first claim to liquidation proceeds. In this connection, creditors should be apprised that the company is believed to be more valuable as a going concern than in Liquidation. Management of the Debtors has reviewed the assets of the company and has determined that upon Liquidation, the reasonable liquidation value of the assets of the estate is approximately as set forth in the attached Exhibit "E". This summary analysis was prepared by the Debtors and management believes that it is reasonable.

The Debtors' assets consist primarily of inventory. Historically, in a bankruptcy case where the Debtor is being liquidated, liquidation of inventory in a substantial reduction from book value of the inventory. It is clear that the estimated liabilities of the Company on liquidation would exceed the amount realized from liquidation by an amount between $1,895,000.00 and $2,220,000.00.

Recoveries of other amounts are equally subject to the vagaries of litigation and the delays accompanying that process, such as potential recoveries from insiders. Moreover, there have been no payments to insiders on account of their Class IV claims for over 5 years. Consequently the

likelihood of any recovery against insiders is remote. Since the insiders are making contributions to fund the Plan, the Debtors believe that such funding is a reasonable equivalent to any potential recovery of insider claims, even if a Trustee were to be successful in recovering amounts that would be disputed by the insiders.

**If the Debtors were converted to Chapter 7 cases and liquidated it is the Debtors' view there would be no funds available for distribution to unsecured creditors. The Debtors believe based on historical recoveries in liquidation that should the company be liquidated it is more likely that recovery would be on the lower end of the analysis. Moreover, should the company be liquidated and in the unlikely event there were funds available for distribution to creditors it would be several years before any distribution would be made to creditors.**

## VI.    METHOD OF POST-PETITION OPERATIONS

During the period of implementation of the Plan of Reorganization and thereafter, it is anticipated that the Debtors' day-to-day business affairs will be managed by Rosalind Perlmutter, Robert Perlmutter and the management team consisting of Frank Vassi, *comptroller*, Dennis Katz, *Purchasing Director*, Lois Friedman, *Human Resources Director*, Ralph Niebles, *Director of Information Technology and Operations Manager*, Pat Oblak, *Director of Direct Marketing and Special Projects* and each of the respective store managers.  Managements salaries were adjusted during the Chapter 11 case by a reduction of five percent (5%) and will be further adjusted post confirmation as reflected in the projections, see Exhibit "C ".

## VI.    PREFERENTIAL OR FRAUDULENT CONVEYANCES AND PENDING LITIGATION

The Debtors have reviewed payments within the preference period (90 days prior to the date of bankruptcy for general creditors and one year for insiders as defined by the Bankruptcy Code) and has concluded that any transfers may be subject to defenses and collectability issues. In any event, the Debtors have provided in its Plan that no preference claims will be brought against unsecured creditors including insiders.

## VII.    PROCEDURES WITH RESPECT TO FILING OBJECTIONS TO CLAIMS

In order to share in the distributions being made to any class of creditors, a creditor must have timely filed a proof of claim on or before the date set by the Court and in the form required by the Bankruptcy Rules, unless the creditor's Claim was listed in the Schedule of Liabilities filed by the Debtor, and that listing did not indicate the creditor's Claim as being disputed, contingent or unliquidated.  Each individual creditor has the duty to ascertain the accuracy of its listing in the

Schedule of Liabilities and to file a proof of claim in the event that it disagrees with the manner scheduled by the Debtor, or in the event that it is not scheduled at all by the Debtor.  Certain Claims, called Rejection Claims, which arise from the rejection of unexpired or executory contracts, may be filed within thirty (30) days after the Confirmation Date.  However, the Debtors will be assuming all executory contracts and unexpired leases to which the Reorganized Debtors are parties pursuant to the Plan. Therefore, the Debtors do not anticipate any Rejection Claims other than those already filed in the case for premises previously leased b y the Reorganized Debtors.

The Debtors or any other party in interest will be required to file Objections to the Allowance of any Claim including Rejection Claims, if any, pursuant to an Order which will be entered by the Bankruptcy Court. Creditors and all interested parties will be served with a copy of that Order and are directed to review carefully the time limitations contained therein. Pursuant to the Plan terms, such objections must be filed no later than fifteen (15) days after the Effective Date. The Effective Date is ten (10) days after the date when the court enters an order confirming the Plan.

The failure of the Debtors, or any other party in interest, to object to or examine any claim for the purposes of voting on the Plan does not waive the rights of the Debtors, or any other party in interest to object to such claims later in any way or seek any type of relief as might be appropriate.

## IX.    SPECIAL RISK FACTORS

Operations of the Debtors' business is impacted by all factors which affect its clientele.  The Debtors' customers are engaged in a wide variety of business areas.

Certain substantial risk factors are inherent to most Chapter 11 Plans of Reorganization.  If such Plans are accepted, it is usually because they represent a greater hope of return and dividends than Chapter 7 liquidation.  Creditors must consider the risk factor between liquidation and the additional administrative costs involved in a Chapter 7 liquidation case as opposed to the reorganization proposed herein. Moreover, the time delay in receiving a distribution and the amount thereof, coupled with the uncertainty of recoveries sufficient to pay a dividend to unsecured creditors should also be considered by creditors. Inherent in the ongoing operation of the business, is the continued ability of management to maintain the operations of the Debtors as an ongoing business enterprise capable of making the payments reflected in the Plan.  In that connection, creditors must examine the terms and conditions of the payments required under the Plan and the management experience, capabilities and financial resources of the owners and operators of the business.

**ALL THE RISK FACTORS INHERENT IN A PLAN OF REORGANIZATION UNDER CHAPTER 11 ARE PRESENT IN THIS CASE.  CREDITORS ARE URGED TO CAREFULLY READ THIS DISCLOSURE STATEMENT AND THE ANNEXED**

FINANCIAL STATEMENTS, TOGETHER WITH THE ACCOMPANYING PLAN OF REORGANIZATION, IN FULL, SO THAT AN INFORMED JUDGMENT CAN BE EXERCISED WITH RESPECT TO VOTING ON THE PLAN.

X.     CONCLUSION

     A.     The effect of Confirmation of the Plan

        If the court confirms the Plan, the terms and conditions of the Plan will bind the Debtors, the creditors and the equity security holders. Since the impaired creditor claims and equity security interests are impaired they will be bound by the terms of the Plan even if they did not accept the Plan. Moreover the confirmation of the Plan will discharge the Debtors from debts arising before the date of such confirmation and any debts arising from the rejection of an executory contract, certain avoidance actions and certain postpetition tax claims. Since none of the Debtors' executory contracts have been rejected and there are no avoidance actions or postpetition tax claims, that aspect of the confirmation order will have no affect on creditors.

        In the event of any conflict between the Plan and this Disclosure Statement, the terms of the Plan shall govern.

        The Debtors believe the Chapter 11 Plan of Reorganization is feasible, should be accepted by creditors and confirmed by the Court.

Dated:  November 5, 2010.


(Signature Page Follows)

_Rosalind Perlmutter, President_
Pearl Companies, Inc., et al

SANDLER & SANDLER
By M. L. Sandler, P. A.
*Council for Pearl Companies, Inc., et al*
P O Box 402727
Miami Beach, FL 33140
T: 305-379-6655 / F: 786-472-7077
E: martin@sandler-sandler.com

*/s/ Martin L. Sandler*

Martin L. Sandler
Florida Bar No. 0070370

## SCHEDULE OF RECEIPTS AND DISBURSEMENTS
**FOR THE PERIOD BEGINNING** SEPTEMBER 1, 2010 **AND ENDING** SEPTEMBER 30, 2010

**PEARL ART & CRAFT SUPPLY CORP.**  **CASE NO.: 10-19358-BKC-JKO**
Date of Petition:   APRIL 10, 2010

| | CURRENT MONTH | CUMULATIVE PETITION TO DATE |
|---|---|---|
| **1. FUNDS AT BEGINNING OF PERIOD** | 233,412.93 (a) | 313,874.01 (b) |
| **2. RECEIPTS:** | | |
| A. Cash Sales | 554,676.95 | 3,097,713.14 |
| Minus: Cash Refunds | (-) | |
| Net Cash Sales | 554,676.95 | 3,097,713.14 |
| B. Accounts Receivable | | |
| C. Other Receipts *(See MOR-3)* | 1,507,578.06 | 7,088,515.77 |
| (If you receive rental income, you must attach a rent roll.) | | |
| **3. TOTAL RECEIPTS** *(Lines 2A+2B+2C)* | 2,062,255.01 | 10,186,228.91 |
| **4. TOTAL FUNDS AVAILABLE FOR OPERATIONS** *(Line 1 + Line 3)* | 2,295,667.94 | 10,500,102.92 |
| **5. DISBURSEMENTS** | | |
| A. Advertising | | 6,725.22 |
| B. Bank Charges | 21,030.81 | 94,064.69 |
| C. Contract Labor | 7,520.42 | 61,341.61 |
| D. Fixed Asset Payments (not incl. in "N") | | |
| E. Insurance | 121,103.55 | 756,623.93 |
| F. Inventory Payments *(See Attach. 2)* | 699,116.17 | 3,765,066.04 |
| G. Leases | | 3,224.44 |
| H. Manufacturing Supplies | | 1,531.05 |
| I. Office Supplies | 20,476.67 | 48,979.56 |
| J. Payroll - Net *(See Attachment 4B)* | 332,288.00 | 1,739,154.17 |
| K. Professional Fees (Accounting & Legal) | 48,281.44 | 159,698.80 |
| L. Rent | 4,640.00 | 57,251.43 |
| M. Repairs & Maintenance | 21,919.69 | 153,992.81 |
| N. Secured Creditor Payments *(See Attach. 2)* | 496,644.61 | 1,544,992.81 |
| O. Taxes Paid - Payroll *(See Attachment 4C)* | 109,949.00 | 600,398.51 |
| P. Taxes Paid - Sales & Use *(See Attachment 4C)* | 101,553.64 | 481,403.99 |
| Q. Taxes Paid - Other *(See Attachment 4C)* | 1,375.00 | 2,471.75 |
| R. Telephone | 29,508.39 | 134,329.86 |
| S. Travel & Entertainment | 133.80 | 287.69 |
| Y. U.S. Trustee Quarterly Fees | | 27,300.00 |
| U. Utilities | 74,550.29 | 272,273.21 |
| V. Vehicle Expenses | | 9,092.79 |
| W. Other Operating Expenses *(See MOR-3)* | 252,373.51 | 627,441.37 |
| **6. TOTAL DISBURSEMENTS** *(Sum of 5A thru W)* | 2,107,720.99 | 10,312,155.97 |
| **7. ENDING BALANCE** *(Line 4 Minus Line 6)* | 187,946.95(c | 187,946.95 (c) |

**I declare under penalty of perjury that this statement and the accompanying documents and reports are true and correct to the best of my knowledge and belief.**

This   20TH  day of   OCTOBER , 2010 .       _Con. Roccer_
                                             (Signature)

(a) This number is carried forward from last month's report. For the first report only, this number will be the balance as of the petition date.
(b) This figure will not change from month to month. It is always the amount of funds on hand as of the date of the petition.
(c) These two amounts will always be the same if form is completed correctly.

MOR-2

**EXHIBIT "A"**

## SCHEDULE OF RECEIPTS AND DISBURSEMENTS
### FOR THE PERIOD BEGINNING  SEPTEMBER 01, 2010 AND ENDING  SEPTEMBER 30, 2010

PEARL ART & CRAFT SUPPLIES OF CALIFORNIA, INC.    **Case Number:  10-19359-BKC-JKO**

Date of Petition:  _____APRIL 10, 2010_____

| | CURRENT MONTH | CUMULATIVE PETITION TO DATE |
|---|---|---|
| **1. FUNDS AT BEGINNING OF PERIOD** | 4,724.34 (a) | 11,902.35 (b) |
| **2. RECEIPTS:** | | |
| A. Cash Sales | 138,133.06 | 796,926.74 |
| Minus:  Cash Refunds | (-) | |
| Net Cash Sales | 138,133.06 | 796,926.74 |
| B.  Accounts Receivable | | |
| C.  Other Receipts *(See MOR-3)* | | |
| (If you receive rental income, you must attach a rent roll.) | | |
| **3.  TOTAL RECEIPTS *(Lines 2A+2B+2C)*** | 138,133.06 | 796,926.74 |
| **4.  TOTAL FUNDS AVAILABLE FOR OPERATIONS *(Line 1 + Line 3)*** | 142,857.40 | 808,829.09 |
| **5.  DISBURSEMENTS** | | |
| A. Advertising | | |
| B. Bank Charges | | |
| C. Contract Labor | | |
| D. Fixed Asset Payments (not incl. in "N") | | |
| E. Insurance | | |
| F.  Inventory Payments  *(See Attach. 2)* | | |
| G. Leases | | |
| H. Manufacturing Supplies | | |
| I.  Office Supplies | | 296.03 |
| J.  Payroll - Net *(See Attachment 4B)* | | |
| K. Professional Fees (Accounting & Legal) | | |
| L.  Rent | | |
| M. Repairs & Maintenance | | |
| N.  Secured Creditor Payments *(See Attach. 2)* | | |
| O. Taxes Paid - Payroll *(See Attachment 4C)* | | |
| P. Taxes Paid - Sales & Use *(See Attachment 4C)* | | |
| Q. Taxes Paid - Other *(See Attachment 4C)* | | |
| R. Telephone | | |
| S.  Travel & Entertainment | | |
| Y. U.S. Trustee Quarterly Fees | | |
| U. Utilities | | |
| V. Vehicle Expenses | | |
| W. Other Operating Expenses *(See MOR-3)* | 139,114.00 | 804,789.66 |
| **6.  TOTAL DISBURSEMENTS *(Sum of 5A thru W)*** | 139,114.00 | 805,085.69 |
| **7.  ENDING BALANCE *(Line 4 Minus Line 6)*** | 3,743.40 (c) | 3,743.40 (c) |

**I declare under penalty of perjury that this statement and the accompanying documents and reports are true and correct to the best of my knowledge and belief.**

This  ___20TH__ day of ___OCTOBER___, 2010_ .

_____  CONTROLLER
(Signature)

(a) This number is carried forward from last month's report.  For the first report only, this number will be the balance as of the petition date.

(b) This figure will not change from month to month.  It is always the amount of funds on hand as of the date of the petition.

(c) These two amounts will always be the same if form is completed correctly.

MOR-2

## EXHIBIT "A"

**SCHEDULE OF RECEIPTS AND DISBURSEMENTS**
**FOR THE PERIOD BEGINNING** SEPTEMBER 1, 2010      **AND ENDING** SEPTEMBER 30, 2010

Name of Debtor:  PEARL PAINT COMPANY, INC.          **Case Number 10-19366-BKC-JKO**
Date of Petition:      APRIL 10, 2010

|  | CURRENT MONTH | CUMULATIVE PETITION TO DATE |
|---|---|---|
| **1. FUNDS AT BEGINNING OF PERIOD** | 60,348.58 (a) | 96,584.14        (b) |
| **2. RECEIPTS:** | | |
| A. Cash Sales | 1,353,488.32 | 5,566,984.21 |
| Minus:  Cash Refunds | (-) | |
| Net Cash Sales | 1,353,488.32 | 5,566,984.21 |
| B.  Accounts Receivable | | |
| C.  Other Receipts *(See MOR-3)* | | |
| (If you receive rental income, you must attach a rent roll.) | | |
| **3. TOTAL RECEIPTS (Lines 2A+2B+2C)** | **1,353,488.32** | **5,566,984.21** |
| **4. TOTAL FUNDS AVAILABLE FOR OPERATIONS (Line 1 + Line 3)** | **1,413,836.90** | **5,663,568.35** |
| **5. DISBURSEMENTS** | | |
| A. Advertising | | |
| B. Bank Charges | | |
| C. Contract Labor | | |
| D. Fixed Asset Payments (not incl. in "N") | | |
| E. Insurance | | |
| F.  Inventory Payments  *(See Attach. 2)* | | |
| G. Leases | | |
| H. Manufacturing Supplies | | |
| I.  Office Supplies | | |
| J.  Payroll - Net *(See Attachment 4B)* | | |
| K. Professional Fees (Accounting & Legal) | | |
| L.  Rent | | |
| M. Repairs & Maintenance | | |
| N.  Secured Creditor Payments *(See Attach. 2)* | | |
| O. Taxes Paid - Payroll *(See Attachment 4C)* | | |
| P. Taxes Paid - Sales & Use *(See Attachment 4C)* | | |
| Q. Taxes Paid - Other *(See Attachment 4C)* | | |
| R. Telephone | | |
| S.  Travel & Entertainment | | |
| Y.  U.S. Trustee Quarterly Fees | | |
| U. Utilities | | |
| V.  Vehicle Expenses | | |
| W. Other Operating Expenses *(See MOR-3)* | 1,368,464.06 | 5,618,195.51 |
| **6. TOTAL DISBURSEMENTS (Sum of 5A thru W)** | **1,368,464.06** | **5,618,195.51** |
| **7. ENDING BALANCE (Line 4 Minus Line 6)** | 45,372.84 c) | 45,372.84        (c) |

I declare under penalty of perjury that this statement and the accompanying documents and reports are true and correct to the best of my knowledge and belief.

This     20TH    day of     OCTOBER    , 2010 .                _____  CONTROLLER
                                                                           (Signature)

(a)This number is carried forward from last month's report.  For the first report only, this number will be the balance as of the petition date.
(b)This figure will not change from month to month.  It is always the amount of funds on hand as of the date of the petition.
(c)These two amounts will always be the same if form is completed correctly.

**EXHIBIT "A"**

## SCHEDULE OF RECEIPTS AND DISBURSEMENTS
### FOR THE PERIOD BEGINNING  AUGUST 1, 2010     AND ENDING  AUGUST 31, 2010

**PEARL ART & CRAFT SUPPLY CORP.**          **CASE NO.: 10-19358-BKC-JKO**

Date of Petition:     APRIL 10, 2010

| | CURRENT MONTH | CUMULATIVE PETITION TO DATE |
|---|---|---|
| **1. FUNDS AT BEGINNING OF PERIOD** | **190,124.23** (a) | **313,874.01** (b) |
| **2. RECEIPTS:** | | |
| A. Cash Sales | 578,845.33 | 2,543,036.19 |
| Minus: Cash Refunds | (-) | |
| Net Cash Sales | 578,845.33 | 2,543,036.19 |
| B. Accounts Receivable | | |
| C. Other Receipts *(See MOR-3)* | 1,078,806.81 | 5,580,937.71 |
| (If you receive rental income, you must attach a rent roll.) | | |
| **3. TOTAL RECEIPTS** *(Lines 2A+2B+2C)* | **1,657,652.14** | **8,123,973.90** |
| **4. TOTAL FUNDS AVAILABLE FOR OPERATIONS** *(Line 1 + Line 3)* | **1,847,776.37** | **8,437,847.91** |
| **5. DISBURSEMENTS** | | |
| A. Advertising | | 6,725.22 |
| B. Bank Charges | 34,160.83 | 73,033.88 |
| C. Contract Labor | 13,313.39 | 53,821.19 |
| D. Fixed Asset Payments (not incl. in "N") | | |
| E. Insurance | 125,341.53 | 635,520.38 |
| F. Inventory Payments *(See Attach. 2)* | 549,327.27 | 3,065,949.87 |
| G. Leases | | 3,224.44 |
| H. Manufacturing Supplies | | 1,531.05 |
| I. Office Supplies | 4,374.47 | 28,502.89 |
| J. Payroll - Net *(See Attachment 4B)* | 269,941.30 | 1,406,866.17 |
| K. Professional Fees (Accounting & Legal) | 47,403.46 | 111,417.36 |
| L. Rent | 233,867.79 | 1,100,213.87 |
| M. Repairs & Maintenance | 20,258.49 | 132,073.12 |
| N. Secured Creditor Payments *(See Attach. 2)* | | |
| O. Taxes Paid - Payroll *(See Attachment 4C)* | 88,953.55 | 490,449.51 |
| P. Taxes Paid - Sales & Use *(See Attachment 4C)* | 105,518.53 | 379,850.35 |
| Q. Taxes Paid - Other *(See Attachment 4C)* | 1,096.75 | 1,096.75 |
| R. Telephone | 24,978.64 | 104,821.47 |
| S. Travel & Entertainment | 114.00 | 153.89 |
| Y. U.S. Trustee Quarterly Fees | | 27,300.00 |
| U. Utilities | 48,230.47 | 197,722.92 |
| V. Vehicle Expenses | 1,632.06 | 9,092.79 |
| W. Other Operating Expenses *(See MOR-3)* | 45,850.91 | 375,067.86 |
| **6. TOTAL DISBURSEMENTS** *(Sum of 5A thru W)* | **1,614,363.44** | **8,204,434.98** |
| **7. ENDING BALANCE** *(Line 4 Minus Line 6)* | **233,412.93** (c) | **233,412.93** (c) |

**I declare under penalty of perjury that this statement and the accompanying documents and reports are true and correct to the best of my knowledge and belief.**

This     20TH   day of     SEPTEMBER   , 2010 .                         *CONTROLLER*

                                                    *(Signature)*

(a)This number is carried forward from last month's report.  For the first report only, this number will be the balance as of the petition date.

(b)This figure will not change from month to month.  It is always the amount of funds on hand as of the date of the petition.

(c)These two amounts will always be the same if form is completed correctly.

MOR-2

# EXHIBIT "A"

**SCHEDULE OF RECEIPTS AND DISBURSEMENTS**
**FOR THE PERIOD BEGINNING  AUGUST 01, 2010 AND ENDING  AUGUST 31, 2010**

PEARL ART & CRAFT SUPPLIES OF CALIFORNIA, INC.    **Case Number:  10-19359-BKC-JKO**

Date of Petition:    APRIL 10, 2010

|  | CURRENT MONTH | CUMULATIVE PETITION TO DATE |
|---|---|---|
| **1. FUNDS AT BEGINNING OF PERIOD** | 4,697.21(a) | 11,902.35    (b) |
| **2. RECEIPTS:** | | |
| A. Cash Sales | 130,651.35 | 658,793.68 |
| Minus:  Cash Refunds | (-) | |
| Net Cash Sales | 130,651.35 | 658,793.68 |
| B.  Accounts Receivable | | |
| C.  Other Receipts *(See MOR-3)* | | |
| (If you receive rental income, you must attach a rent roll.) | | |
| **3. TOTAL RECEIPTS *(Lines 2A+2B+2C)*** | 130,651.35 | 658,793.68 |
| **4. TOTAL FUNDS AVAILABLE FOR OPERATIONS *(Line 1 + Line 3)*** | 135,348.56 | 674,696.03 |
| **5. DISBURSEMENTS** | | |
| A. Advertising | | |
| B. Bank Charges | | |
| C. Contract Labor | | |
| D.  Fixed Asset Payments (not incl. in "N") | | |
| E. Insurance | | |
| F.   Inventory Payments  *(See Attach. 2)* | | |
| G. Leases | | |
| H. Manufacturing Supplies | | |
| I.  Office Supplies | | 296.03 |
| J. Payroll - Net *(See Attachment 4B)* | | |
| K. Professional Fees (Accounting & Legal) | | |
| L.   Rent | | |
| M. Repairs & Maintenance | | |
| N.   Secured Creditor Payments *(See Attach. 2)* | | |
| O. Taxes Paid - Payroll *(See Attachment 4C)* | | |
| P. Taxes Paid - Sales & Use *(See Attachment 4C)* | | |
| Q. Taxes Paid - Other *(See Attachment 4C)* | | |
| R. Telephone | | |
| S.   Travel & Entertainment | | |
| Y.  U.S. Trustee Quarterly Fees | | |
| U. Utilities | | |
| V. Vehicle Expenses | | |
| W. Other Operating Expenses *(See MOR-3)* | 130,624.22 | 665,675.66 |
| **6. TOTAL DISBURSEMENTS *(Sum of 5A thru W)*** | 130,624.22 | 665,971.69 |
| **7. ENDING BALANCE *(Line 4 Minus Line 6)*** | 4,724.34    (c) | 4,724.34   (c) |

**I declare under penalty of perjury that this statement and the accompanying documents and reports are true and correct to the best of my knowledge and belief.**

This    17TH   day of    SEPTEMBER   , 20 10 .      _[signature]_ CONTROLLER
(Signature)

(a)This number is carried forward from last month's report.  For the first report only, this number will be the balance as of the petition date.

(b)This figure will not change from month to month.  It is always the amount of funds on hand as of the date of the petition.

(c)These two amounts will always be the same if form is completed correctly.

**EXHIBIT "A"**

## SCHEDULE OF RECEIPTS AND DISBURSEMENTS
### FOR THE PERIOD BEGINNING  AUGUST 1, 2010      AND ENDING  AUGUST 31, 2010

Name of Debtor:  PEARL PAINT COMPANY, INC.          **Case Number 10-19366-BKC-JKO**

Date of Petition:      APRIL 10, 2010

|  | CURRENT MONTH | CUMULATIVE PETITION TO DATE |
|---|---|---|
| **1. FUNDS AT BEGINNING OF PERIOD** | 51,484.96  (a) | 96,584.14          (b) |
| **2. RECEIPTS:** | | |
| A. Cash Sales | 906,081.21 | 4,213,495.89 |
| Minus:  Cash Refunds | (-) | |
| Net Cash Sales | 906,081.21 | 4,213,495.89 |
| B.  Accounts Receivable | | |
| C.  Other Receipts *(See MOR-3)* | | |
| (If you receive rental income, you must attach a rent roll.) | | |
| **3. TOTAL RECEIPTS (Lines 2A+2B+2C)** | 906,081.21 | 4,213,495.89 |
| **4. TOTAL FUNDS AVAILABLE FOR OPERATIONS (Line 1 + Line 3)** | 957,566.17 | 4,310,080.03 |
| **5. DISBURSEMENTS** | | |
| A. Advertising | | |
| B. Bank Charges | | |
| C. Contract Labor | | |
| D. Fixed Asset Payments (not incl. in "N") | | |
| E. Insurance | | |
| F.  Inventory Payments  *(See Attach. 2)* | | |
| G. Leases | | |
| H. Manufacturing Supplies | | |
| I.  Office Supplies | | |
| J.  Payroll - Net *(See Attachment 4B)* | | |
| K. Professional Fees (Accounting & Legal) | | |
| L.  Rent | | |
| M. Repairs & Maintenance | | |
| N.  Secured Creditor Payments *(See Attach. 2)* | | |
| O.  Taxes Paid - Payroll *(See Attachment 4C)* | | |
| P.  Taxes Paid - Sales & Use *(See Attachment 4C)* | | |
| Q.  Taxes Paid - Other *(See Attachment 4C)* | | |
| R.  Telephone | | |
| S.  Travel & Entertainment | | |
| Y.  U.S. Trustee Quarterly Fees | | |
| U.  Utilities | | |
| V.  Vehicle Expenses | | |
| W. Other Operating Expenses *(See MOR-3)* | 897,217.59 | 4,249,731.45 |
| **6. TOTAL DISBURSEMENTS (Sum of 5A thru W)** | 897,217.59 | 4,249,731.45 |
| **7. ENDING BALANCE (Line 4 Minus Line 6)** | 60,348.58  (c) | 60,348.58          (c) |

I declare under penalty of perjury that this statement and the accompanying documents and reports are true and correct to the best of my knowledge and belief.

This     17TH     day of     SEPTEMBER   , 2010 .          _(Signature)_   CONTROLLER

(a)This number is carried forward from last month's report.  For the first report only, this number will be the balance as of the petition date.

(b)This figure will not change from month to month.  It is always the amount of funds on hand as of the date of the petition.

(c)These two amounts will always be the same if form is completed correctly.

## EXHIBIT "A"

## SCHEDULE OF RECEIPTS AND DISBURSEMENTS
### FOR THE PERIOD BEGINNING JULY 1, 2010 ____ AND ENDING JULY 31, 2010 _____

**PEARL ART & CRAFT SUPPLY CORP.**                     **CASE NO.: 10-19358-BKC-JKO**

Date of Petition: _____APRIL 10, 2010_____

|  |  | CURRENT MONTH | CUMULATIVE PETITION TO DATE |
|---|---|---|---|
| **1. FUNDS AT BEGINNING OF PERIOD** | | 288,160.78 (a) | 313,874.01(b) |
| **2. RECEIPTS:** | | | |
| | A. Cash Sales | 528,838.69 | 1,964,190.86 |
| | Minus: Cash Refunds | (-) | |
| | Net Cash Sales | 528,838.69 | 1,964,190.86 |
| | B. Accounts Receivable | | |
| | C. Other Receipts *(See MOR-3)* | 974,014.11 | 4,502,130.90 |
| | (If you receive rental income, you must attach a rent roll.) | | |
| **3. TOTAL RECEIPTS *(Lines 2A+2B+2C)*** | | 1,502,852.80 | 6,466,321.76 |
| **4. TOTAL FUNDS AVAILABLE FOR OPERATIONS *(Line 1 + Line 3)*** | | 1,791,013.58 | 6,780,195.77 |
| **5. DISBURSEMENTS** | | | |
| | A. Advertising | 4,701.00 | 6,725.22 |
| | B. Bank Charges | 20,017.00 | 38,873.05 |
| | C. Contract Labor | 6,631.50 | 40,507.80 |
| | D. Fixed Asset Payments (not incl. in "N") | | |
| | E. Insurance | 116,941.83 | 510,178.85 |
| | F. Inventory Payments *(See Attach. 2)* | 551,220.99 | 2,516,622.60 |
| | G. Leases | | 3,224.44 |
| | H. Manufacturing Supplies | 733.05 | 1,531.05 |
| | I. Office Supplies | 14,676.55 | 24,128.42 |
| | J. Payroll - Net *(See Attachment 4B)* | 287,526.40 | 1,136,924.87 |
| | K. Professional Fees (Accounting & Legal) | 14,234.80 | 64,013.90 |
| | L. Rent | 236,296.19 | 866,346.08 |
| | M. Repairs & Maintenance | 15,985.89 | 111,814.63 |
| | N. Secured Creditor Payments *(See Attach. 2)* | | |
| | O. Taxes Paid - Payroll *(See Attachment 4C)* | 91,943.00 | 401,495.96 |
| | P. Taxes Paid - Sales & Use *(See Attachment 4C)* | 112,263.00 | 274,331.82 |
| | Q. Taxes Paid - Other *(See Attachment 4C)* | | |
| | R. Telephone | 25,920.15 | 79,842.83 |
| | S. Travel & Entertainment | 39.89 | 39.89 |
| | Y. U.S. Trustee Quarterly Fees | 27,300.00 | 27,300.00 |
| | U. Utilities | 30,234.38 | 149,492.45 |
| | V. Vehicle Expenses | 1,539.09 | 7,460.73 |
| | W. Other Operating Expenses *(See MOR-3)* | 42,684.64 | 329,216.95 |
| **6. TOTAL DISBURSEMENTS *(Sum of 5A thru W)*** | | 1,600,889.35 | 6,590,071.54 |
| **7. ENDING BALANCE *(Line 4 Minus Line 6)*** | | 190,124.23(c) | 190,124.23(c) |

I declare under penalty of perjury that this statement and the accompanying documents and reports are true and correct to the best of my knowledge and belief.

This ____20TH____ day of _____AUGUST____, 20 10 .

_____  CONTROLLER
(Signature)

_(a)This number is carried forward from last month's report. For the first report only, this number will be the balance as of the petition date.

(b)This figure will not change from month to month. It is always the amount of funds on hand as of the date of the petition.

(c)These two amounts will always be the same if form is completed correctly.

## EXHIBIT "A"

## SCHEDULE OF RECEIPTS AND DISBURSEMENTS
### FOR THE PERIOD BEGINNING JULY 01, 2010 AND ENDING JULY 31, 2010

PEARL ART & CRAFT SUPPLIES OF CALIFORNIA, INC.   **Case Number: 10-19359-BKC-JKO**

Date of Petition:    APRIL 10, 2010

|  | CURRENT MONTH | CUMULATIVE PETITION TO DATE |
|---|---|---|
| **1. FUNDS AT BEGINNING OF PERIOD** | 6,169.57 (a) | 11,902.35 (b) |
| **2. RECEIPTS:** | | |
| A. Cash Sales | 122,543.52 | 528,142.33 |
| Minus:  Cash Refunds | (-) | |
| Net Cash Sales | 122,543.52 | 528,142.33 |
| B. Accounts Receivable | | |
| C. Other Receipts *(See MOR-3)* | | |
| (If you receive rental income, you must attach a rent roll.) | | |
| **3. TOTAL RECEIPTS** *(Lines 2A+2B+2C)* | 122,543.52 | 528,142.33 |
| **4. TOTAL FUNDS AVAILABLE FOR OPERATIONS** *(Line 1 + Line 3)* | 128,713.09 | 540,044.68 |
| **5. DISBURSEMENTS** | | |
| A. Advertising | | |
| B. Bank Charges | | |
| C. Contract Labor | | |
| D. Fixed Asset Payments (not incl. in "N") | | |
| E. Insurance | | |
| F. Inventory Payments  *(See Attach. 2)* | | |
| G. Leases | | |
| H. Manufacturing Supplies | | |
| I. Office Supplies | | 296.03 |
| J. Payroll - Net *(See Attachment 4B)* | | |
| K. Professional Fees (Accounting & Legal) | | |
| L. Rent | | |
| M. Repairs & Maintenance | | |
| N. Secured Creditor Payments *(See Attach. 2)* | | |
| O. Taxes Paid - Payroll *(See Attachment 4C)* | | |
| P. Taxes Paid - Sales & Use *(See Attachment 4C)* | | |
| Q. Taxes Paid - Other *(See Attachment 4C)* | | |
| R. Telephone | | |
| S. Travel & Entertainment | | |
| Y. U.S. Trustee Quarterly Fees | | |
| U. Utilities | | |
| V. Vehicle Expenses | | |
| W. Other Operating Expenses *(See MOR-3)* | 124,015.88 | 535,051.44 |
| **6. TOTAL DISBURSEMENTS** *(Sum of 5A thru W)* | 124,015.88 | 535,347.47 |
| **7. ENDING BALANCE** *(Line 4 Minus Line 6)* | 4,697.21 (c) | 4,697.21 (c) |

I declare under penalty of perjury that this statement and the accompanying documents and reports are true and correct to the best of my knowledge and belief.

This ____19TH____ day of ____AUGUST____, 2010 .

_____    CONTROLLOR
(Signature)

_(a)This number is carried forward from last month's report.  For the first report only, this number will be the balance as of the petition date.

(b)This figure will not change from month to month.  It is always the amount of funds on hand as of the date of the petition.

(c)These two amounts will always be the same if form is completed correctly.

**EXHIBIT "A"**

## SCHEDULE OF RECEIPTS AND DISBURSEMENTS
### FOR THE PERIOD BEGINNING JULY 1, 2010      AND ENDING JULY 31, 2010

Name of Debtor:  PEARL PAINT COMPANY, INC.          **Case Number 10-19366-BKC-JKO**

Date of Petition:      APRIL 10, 2010

| | CURRENT MONTH | CUMULATIVE PETITION TO DATE |
|---|---|---|
| **1. FUNDS AT BEGINNING OF PERIOD** | **37,076.64 (a)** | **96,584.14 (b)** |
| **2. RECEIPTS:** | | |
| A. Cash Sales | 864,406.55 | 3,307,414.68 |
| Minus:  Cash Refunds | (-) | |
| Net Cash Sales | 864,406.55 | 3,307,414.68 |
| B.  Accounts Receivable | | |
| C.  Other Receipts *(See MOR-3)* | | |
| (If you receive rental income, you must attach a rent roll.) | | |
| **3. TOTAL RECEIPTS (Lines 2A+2B+2C)** | **864,406.55** | **3,307,414.68** |
| **4. TOTAL FUNDS AVAILABLE FOR OPERATIONS (Line 1 + Line 3)** | **901,483.19** | **3,403,998.82** |
| | | |
| **5. DISBURSEMENTS** | | |
| A. Advertising | | |
| B. Bank Charges | | |
| C. Contract Labor | | |
| D. Fixed Asset Payments (not incl. in "N") | | |
| E. Insurance | | |
| F.  Inventory Payments  *(See Attach. 2)* | | |
| G. Leases | | |
| H. Manufacturing Supplies | | |
| I.  Office Supplies | | |
| J.  Payroll - Net *(See Attachment 4B)* | | |
| K. Professional Fees (Accounting & Legal) | | |
| L.  Rent | | |
| M. Repairs & Maintenance | | |
| N.  Secured Creditor Payments *(See Attach. 2)* | | |
| O. Taxes Paid - Payroll *(See Attachment 4C)* | | |
| P. Taxes Paid - Sales & Use *(See Attachment 4C)* | | |
| Q. Taxes Paid - Other *(See Attachment 4C)* | | |
| R. Telephone | | |
| S.  Travel & Entertainment | | |
| Y. U.S. Trustee Quarterly Fees | | |
| U. Utilities | | |
| V. Vehicle Expenses | | |
| W. Other Operating Expenses *(See MOR-3)* | 849,998.23 | 3,352,513.86 |
| **6. TOTAL DISBURSEMENTS (Sum of 5A thru W)** | **849,998.23** | **3,352,513.86** |
| **7. ENDING BALANCE (Line 4 Minus Line 6)** | 51,484.96(c) | 51,484.96(c) |

**I declare under penalty of perjury that this statement and the accompanying documents and reports are true and correct to the best of my knowledge and belief.**

This     20TH   day of     AUGUST    , 2010 .                        CONTROLLER
                                                    (Signature)

 (a)This number is carried forward from last month's report.  For the first report only, this number will be the
      balance as of the petition date.
(b)This figure will not change from month to month.  It is always the amount of funds on hand as of the date of
      the petition.
(c)These two amounts will always be the same if form is completed correctly.

MOR-2

## EXHIBIT "A"

B6 Summary (Official Form 6 - Summary) (12/07)

# United States Bankruptcy Court
## Southern District of Florida

In re    **Pearl Companies, Inc.**                             ,

                                                  Debtor

Case No.    **10-19336**

Chapter              **11**

# SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each.  Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided.  Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 1 | 0.00 | | |
| B - Personal Property | Yes | 4 | 0.00 | | |
| C - Property Claimed as Exempt | No | 0 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | 2,212,000.00 | |
| E - Creditors Holding Unsecured Priority Claims (Total of Claims on Schedule E) | Yes | 1 | | 0.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 1 | | 0.00 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 2 | | | |
| I - Current Income of Individual Debtor(s) | No | 0 | | | N/A |
| J - Current Expenditures of Individual Debtor(s) | No | 0 | | | N/A |
| Total Number of Sheets of ALL Schedules | | 11 | | | |
| Total Assets | | | 0.00 | | |
| Total Liabilities | | | | 2,212,000.00 | |

# EXHIBIT "B"

B6 Summary (Official Form 6 - Summary) (12/07)

# United States Bankruptcy Court
## Southern District of Florida

In re   **Pearl Artist & Craft Supply Corp.**                   ,     Case No. **10-19358**

                                         Debtor                   Chapter        **11**

# SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 1 | 0.00 | | |
| B - Personal Property | Yes | 7 | 4,877,446.01 | | |
| C - Property Claimed as Exempt | No | 0 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | 2,936,556.60 | |
| E - Creditors Holding Unsecured Priority Claims (Total of Claims on Schedule E) | Yes | 9 | | 179,250.81 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 52 | | 7,748,426.74 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 2 | | | |
| I - Current Income of Individual Debtor(s) | No | 0 | | | N/A |
| J - Current Expenditures of Individual Debtor(s) | No | 0 | | | N/A |
| Total Number of Sheets of ALL Schedules | | 73 | | | |
| Total Assets | | | 4,877,446.01 | | |
| Total Liabilities | | | | 10,864,234.15 | |

# EXHIBIT "B"

B6 Summary (Official Form 6 - Summary) (12/07)

# United States Bankruptcy Court
## Southern District of Florida

In re   **Pearl Art & Craft Supplies of California, Inc.**         ,     Case No.    **10-19359**

                                  Debtor             Chapter           **11**

# SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 1 | 0.00 | | |
| B - Personal Property | Yes | 3 | 723,730.46 | | |
| C - Property Claimed as Exempt | No | 0 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | 2,212,000.00 | |
| E - Creditors Holding Unsecured Priority Claims (Total of Claims on Schedule E) | Yes | 2 | | 6,832.32 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 2 | | 535,403.29 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 2 | | | |
| I - Current Income of Individual Debtor(s) | No | 0 | | | N/A |
| J - Current Expenditures of Individual Debtor(s) | No | 0 | | | N/A |
| Total Number of Sheets of ALL Schedules | | 12 | | | |
| Total Assets | | | 723,730.46 | | |
| Total Liabilities | | | | 2,754,235.61 | |

# EXHIBIT "B"

B6 Summary (Official Form 6 - Summary) (12/07)

# United States Bankruptcy Court
## Southern District of Florida

In re    **Pearl Paint Company, Inc.**
_____,
                      Debtor

Case No.    **10-19366**

Chapter          **11**

# SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 1 | 0.00 | | |
| B - Personal Property | Yes | 3 | 2,450,355.65 | | |
| C - Property Claimed as Exempt | No | 0 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | 2,212,000.00 | |
| E - Creditors Holding Unsecured Priority Claims (Total of Claims on Schedule E) | Yes | 1 | | 0.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 2 | | 729,283.66 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 2 | | | |
| I - Current Income of Individual Debtor(s) | No | 0 | | | N/A |
| J - Current Expenditures of Individual Debtor(s) | No | 0 | | | N/A |
| Total Number of Sheets of ALL Schedules | | 11 | | | |
| Total Assets | | | 2,450,355.65 | | |
| Total Liabilities | | | | 2,941,283.66 | |

# EXHIBIT "B"

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com

## NON-RESIDENTIAL EXECUTORY CONTRACTS

The following locations are occupied by the Debtors as tenants pursuant to executory contracts in the form of non-residential real property leases

    a.   1033 E Oakland Park Blvd., Ft. Lauderdale, Florida

    b.   42 Lispenard Street, NY, NY

    c.   48 Lispenard Street, NY, NY

    d.   308 Canal Street, NY, NY

    e.   304-306 Canal Street, NY, NY

    f.   La Cienega Square Shopping Center, Los Angeles, CA

    g.   776 Route 17 N.  Paramus, NJ

    h.   16260 N Dixie Highway, Wilton Manors, Florida

    i.   2101 NW 49th Avenue, Hialeah, Florida

    j.   6468 S Dixie Highway, Miami, FL

**EXHIBT "C"**

**PEARL COMPANIES, INC.**
**PROJECTED CONSOLIDATED STATEMENTS OF OPERATIONS**

| | 2011 | 2012 | 2013 | 2014 | 2015 | TOTAL |
|---|---|---|---|---|---|---|
| Sales | $ 21,700,000 | $ 22,025,500 | $ 22,355,883 | $ 22,691,221 | $ 23,031,589 | $ 111,804,193 |
| Cost of sales | 10,850,000 | 11,012,750 | 11,177,941 | 11,345,610 | 11,515,795 | 55,902,096 |
| Gross profit | $ 10,850,000 | $ 11,012,750 | $ 11,177,942 | $ 11,345,611 | $ 11,515,794 | $ 55,902,097 |
| Gross profit % | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% |
| Salaries | $ 4,526,447 | $ 4,526,447 | $ 4,526,447 | $ 4,526,447 | $ 4,526,447 | $ 22,632,235 |
| Rent & CAM | 2,302,049 | 2,414,589 | 2,596,819 | 2,599,071 | 2,601,346 | $ 12,513,874 |
| Other SG&A | 3,434,909 | 3,470,175 | 3,499,436 | 3,529,058 | 3,559,049 | 17,492,627 |
| Total | $ 10,263,405 | $ 10,411,211 | $ 10,622,702 | $ 10,654,576 | $ 10,686,842 | $ 52,638,736 |
| Operating income (loss) | $ 586,595 | $ 601,539 | $ 555,240 | $ 691,035 | $ 828,952 | $ 3,263,361 |
| Other income (expenses) | | | | | | |
| Interest expense | (190,227) | (190,227) | (190,227) | (190,227) | (190,227) | (951,134) |
| Interest income | 39,000 | 39,000 | 39,000 | 39,000 | 39,000 | 195,000 |
| Other income | | | | | | |
| Gain on sale of assets | | | | | | |
| Total other income (expense) | (151,227) | (151,227) | (151,227) | (151,227) | (151,227) | (756,134) |
| Income (Loss) | $ 435,368 | $ 450,312 | $ 404,013 | $ 539,808 | $ 677,725 | $ 2,507,227 |

**EXHIBIT "D"**

PEARL COMPANIES, INC.
PROJECTED CONSOLIDATED STATEMENTS OF OPERATIONS

| | 2011 January | 2011 February | 2011 March | 2011 April | 2011 May | 2011 June | 2011 July | 2011 August | 2011 September | 2011 October | 2011 November | 2011 December | YEAR END TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales | $ 2,162,107 | $ 2,023,531 | $ 1,954,277 | $ 1,790,966 | $ 1,710,029 | $ 1,528,642 | $ 1,532,284 | $ 1,754,040 | $ 2,217,961 | $ 1,701,492 | $ 1,541,173 | $ 1,783,499 | $ 21,700,000 |
| Cost of sales | 1,081,054 | 1,011,766 | 977,139 | 895,483 | 855,015 | 764,321 | 766,142 | 877,020 | 1,108,981 | 850,746 | 770,587 | 891,750 | $ 10,850,004 |
| Gross profit | $ 1,081,053 | $ 1,011,765 | $ 977,138 | $ 895,483 | $ 855,014 | $ 764,321 | $ 766,142 | $ 891,749 | $ 1,108,980 | $ 850,746 | $ 770,586 | $ 891,749 | $ 10,849,996 |
| Gross profit % | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% |
| Salaries | $ 384,438 | $ 347,234 | $ 384,438 | $ 372,037 | $ 384,438 | $ 372,037 | $ 384,438 | $ 384,438 | $ 372,037 | $ 384,438 | $ 372,037 | $ 384,438 | $ 4,526,447 |
| Rent & CAM | 191,837 | 191,837 | 191,837 | 191,837 | 191,837 | 191,837 | 191,837 | 191,837 | 191,837 | 191,837 | 191,837 | 191,837 | $ 2,302,049 |
| Other SG&A | 286,242 | 286,242 | 286,242 | 286,242 | 286,242 | 286,242 | 286,242 | 286,242 | 286,242 | 286,242 | 286,242 | 286,242 | $ 3,434,909 |
| Total | $ 862,518 | $ 825,314 | $ 862,518 | $ 850,117 | $ 862,518 | $ 850,117 | $ 862,518 | $ 862,518 | $ 850,117 | $ 862,518 | $ 850,117 | $ 862,518 | $ 10,263,405 |
| Operating Income (loss) | $ 218,535 | $ 186,451 | $ 114,620 | $ 45,366 | $ (7,504) | $ (85,796) | $ (96,376) | $ 29,231 | $ 258,863 | $ (11,772) | $ (79,531) | $ 29,231 | 586,591 |
| Other Income (expenses) | | | | | | | | | | | | | |
| Interest expense | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | (190,227) |
| Interest Income | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 39,000 |
| Other Income | | | | | | | | | | | | | |
| Gain on sale of assets | | | | | | | | | | | | | |
| Total other Income (expense) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | (151,227) |
| Income (Loss) | $ 205,933 | $ 173,849 | $ 102,018 | $ 32,764 | $ (20,106) | $ (98,398) | $ (108,978) | $ 16,629 | $ 246,261 | $ (24,374) | $ (92,133) | $ 16,629 | 435,364 |

**EXHIBIT "D"**

PEARL COMPANIES, INC.
PROJECTED CONSOLIDATED STATEMENTS OF OPERATIONS

| | 2012 January | 2012 February | 2012 March | 2012 April | 2012 May | 2012 June | 2012 July | 2012 August | 2012 September | 2012 October | 2012 November | 2012 December | YEAR END TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales | $ 2,194,539 | $ 2,053,884 | $ 1,983,592 | $ 1,817,830 | $ 1,735,679 | $ 1,551,571 | $ 1,555,268 | $ 1,780,350 | $ 2,251,230 | $ 1,727,014 | $ 1,564,291 | $ 1,810,252 | $ 22,025,500 |
| Cost of sales | 1,097,269 | 1,026,942 | 991,796 | 908,915 | 867,840 | 775,786 | 777,634 | 890,175 | 1,125,615 | 863,507 | 782,145 | 905,126 | $ 11,012,750 |
| Gross profit | $ 1,097,269 | $ 1,026,942 | $ 991,796 | $ 908,915 | $ 867,840 | $ 775,786 | $ 777,634 | $ 905,126 | $ 1,125,615 | $ 863,507 | $ 782,145 | $ 905,126 | $ 11,012,750 |
| Gross profit % | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% |
| Salaries | $ 384,438 | $ 347,234 | $ 384,438 | $ 372,037 | $ 384,438 | $ 372,037 | $ 384,438 | $ 384,438 | $ 372,037 | $ 384,438 | $ 372,037 | $ 384,438 | $ 4,526,447 |
| Rent & CAM | 201,216 | 201,216 | 201,216 | 201,216 | 201,216 | 201,216 | 201,216 | 201,216 | 201,216 | 201,216 | 201,216 | 201,216 | $ 2,414,589 |
| Other SG&A | 289,181 | 289,181 | 289,181 | 289,181 | 289,181 | 289,181 | 289,181 | 289,181 | 289,181 | 289,181 | 289,181 | 289,181 | $ 3,470,175 |
| Total | $ 874,835 | $ 837,631 | $ 874,835 | $ 862,434 | $ 874,835 | $ 862,434 | $ 874,835 | $ 874,835 | $ 862,434 | $ 874,835 | $ 862,434 | $ 874,835 | $ 10,411,211 |
| Operating Income (loss) | $ 222,434 | $ 189,311 | $ 116,961 | $ 46,481 | $ (6,995) | $ (86,648) | $ (97,201) | $ 30,291 | $ 263,181 | $ (11,328) | $ (80,288) | $ 30,291 | 601,539 |
| Other Income (expenses) | | | | | | | | | | | | | |
| Interest expense | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | (190,227) |
| Interest Income | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 39,000 |
| Other Income | | | | | | | | | | | | | |
| Gain on sale of assets | | | | | | | | | | | | | |
| Total other Income (expense) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | (151,227) |
| Income (Loss) | $ 209,832 | $ 176,708 | $ 104,359 | $ 33,879 | $ (19,598) | $ (99,250) | $ (109,803) | $ 17,689 | $ 250,579 | $ (23,930) | $ (92,891) | $ 17,689 | 450,312 |

**EXHIBIT "D"**

PEARL COMPANIES, INC.
PROJECTED CONSOLIDATED STATEMENTS OF OPERATIONS

| | 2013 January | 2013 February | 2013 March | 2013 April | 2013 May | 2013 June | 2013 July | 2013 August | 2013 September | 2013 October | 2013 November | 2013 December | YEAR END TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales | $ 2,227,457 | $ 2,084,692 | $ 2,013,345 | $ 1,845,098 | $ 1,761,714 | $ 1,574,845 | $ 1,578,597 | $ 1,807,055 | $ 2,284,998 | $ 1,752,919 | $ 1,587,755 | $ 1,837,405 | $ 22,355,883 |
| Cost of sales | 1,113,728 | 1,042,346 | 1,006,673 | 922,549 | 880,857 | 787,423 | 789,299 | 903,528 | 1,142,499 | 876,460 | 793,878 | 918,703 | $ 11,177,942 |
| Gross profit | $ 1,113,728 | $ 1,042,346 | $ 1,006,673 | $ 922,549 | $ 880,857 | $ 787,423 | $ 789,299 | $ 918,703 | $ 1,142,499 | $ 876,460 | $ 793,878 | $ 918,703 | $ 11,177,942 |
| Gross profit % | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% |
| Salaries | $ 384,438 | $ 347,234 | $ 384,438 | $ 372,037 | $ 384,438 | $ 372,037 | $ 384,438 | $ 384,438 | $ 372,037 | $ 384,438 | $ 372,037 | $ 384,438 | $ 4,526,447 |
| Rent & CAM | 216,402 | 216,402 | 216,402 | 216,402 | 216,402 | 216,402 | 216,402 | 216,402 | 216,402 | 216,402 | 216,402 | 216,402 | $ 2,596,819 |
| Other SG&A | 291,620 | 291,620 | 291,620 | 291,620 | 291,620 | 291,620 | 291,620 | 291,620 | 291,620 | 291,620 | 291,620 | 291,620 | $ 3,499,436 |
| Total | $ 892,459 | $ 855,256 | $ 892,459 | $ 880,058 | $ 892,459 | $ 880,058 | $ 892,459 | $ 892,459 | $ 880,058 | $ 892,459 | $ 880,058 | $ 892,459 | $ 10,622,702 |
| Operating Income (loss) | $ 221,269 | $ 187,090 | $ 114,213 | $ 42,491 | $ (11,602) | $ (92,635) | $ (103,161) | $ 26,244 | $ 262,441 | $ (15,999) | $ (86,180) | $ 26,244 | 555,239 |
| Other Income (expenses) | | | | | | | | | | | | | |
| Interest expense | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | (190,227) |
| Interest Income | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 39,000 |
| Other Income | | | | | | | | | | | | | |
| Gain on sale of assets | | | | | | | | | | | | | |
| Total other Income (expense) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | (151,227) |
| Income (Loss) | $ 208,667 | $ 174,488 | $ 101,611 | $ 29,889 | $ (24,204) | $ (105,238) | $ (115,763) | $ 13,641 | $ 249,839 | $ (28,602) | $ (98,783) | $ 13,641 | 404,013 |

**EXHIBIT "D"**

PEARL COMPANIES, INC.
PROJECTED CONSOLIDATED STATEMENTS OF OPERATIONS

| | 2014 January | 2014 February | 2014 March | 2014 April | 2014 May | 2014 June | 2014 July | 2014 August | 2014 September | 2014 October | 2014 November | 2014 December | YEAR END TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales | $ 2,260,869 | $ 2,115,962 | $ 2,043,546 | $ 1,872,774 | $ 1,788,140 | $ 1,598,468 | $ 1,602,276 | $ 1,834,161 | $ 2,319,273 | $ 1,779,213 | $ 1,611,572 | $ 1,864,967 | $ 22,691,221 |
| Cost of sales | 1,130,434 | 1,057,981 | 1,021,773 | 936,387 | 894,070 | 799,234 | 801,138 | 917,081 | 1,159,637 | 889,607 | 805,786 | 932,483 | $ 11,345,611 |
| Gross profit | $ 1,130,434 | $ 1,057,981 | $ 1,021,773 | $ 936,387 | $ 894,070 | $ 799,234 | $ 801,138 | $ 932,483 | $ 1,159,637 | $ 889,607 | $ 805,786 | $ 932,483 | $ 11,345,611 |
| Gross profit % | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% |
| Salaries | $ 384,438 | $ 347,234 | $ 384,438 | $ 372,037 | $ 384,438 | $ 372,037 | $ 384,438 | $ 384,438 | $ 372,037 | $ 384,438 | $ 372,037 | $ 384,438 | $ 4,526,447 |
| Rent & CAM | 216,589 | 216,589 | 216,589 | 216,589 | 216,589 | 216,589 | 216,589 | 216,589 | 216,589 | 216,589 | 216,589 | 216,589 | $ 2,599,071 |
| Other SG&A | 294,088 | 294,088 | 294,088 | 294,088 | 294,088 | 294,088 | 294,088 | 294,088 | 294,088 | 294,088 | 294,088 | 294,088 | $ 3,529,058 |
| Total | $ 895,115 | $ 857,912 | $ 895,115 | $ 882,714 | $ 895,115 | $ 882,714 | $ 895,115 | $ 895,115 | $ 882,714 | $ 895,115 | $ 882,714 | $ 895,115 | $ 10,654,576 |
| Operating Income (loss) | $ 235,319 | $ 200,069 | $ 126,657 | $ 53,673 | $ (1,045) | $ (83,480) | $ (93,977) | $ 37,368 | $ 276,923 | $ (5,509) | $ (76,928) | $ 37,368 | $ 691,034 |
| Other Income (expenses) | | | | | | | | | | | | | |
| Interest expense | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (190,227) |
| Interest Income | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | $ 39,000 |
| Other Income | | | | | | | | | | | | | |
| Gain on sale of assets | | | | | | | | | | | | | |
| Total other Income (expense) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (151,227) |
| Income (Loss) | $ 222,717 | $ 187,467 | $ 114,055 | $ 41,071 | $ (13,648) | $ (96,083) | $ (106,579) | $ 24,766 | $ 264,320 | $ (18,111) | $ (89,531) | $ 24,766 | $ 539,808 |

**EXHIBIT "D"**

PEARL COMPANIES, INC.
PROJECTED CONSOLIDATED STATEMENTS OF OPERATIONS

| | 2015 January | 2015 February | 2015 March | 2015 April | 2015 May | 2015 June | 2015 July | 2015 August | 2015 September | 2015 October | 2015 November | 2015 December | YEAR END TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales | $ 2,294,782 | $ 2,147,702 | $ 2,074,199 | $ 1,900,866 | $ 1,814,962 | $ 1,622,445 | $ 1,626,310 | $ 1,861,674 | $ 2,354,062 | $ 1,805,901 | $ 1,635,745 | $ 1,892,941 | $ 23,031,589 |
| Cost of sales | 1,147,391 | 1,073,851 | 1,037,099 | 950,433 | 907,481 | 811,222 | 813,155 | 930,837 | 1,177,031 | 902,951 | 817,873 | 946,470 | $ 11,515,795 |
| Gross profit | $ 1,147,391 | $ 1,073,851 | $ 1,037,099 | 950,433 | 907,481 | $ 811,222 | $ 813,155 | $ 946,470 | $ 1,177,031 | $ 902,951 | $ 817,873 | $ 946,470 | $ 11,515,795 |
| Gross profit % | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% | 50.0% |
| Salaries | $ 384,438 | $ 347,234 | $ 384,438 | $ 372,037 | $ 384,438 | $ 372,037 | $ 384,438 | $ 384,438 | $ 372,037 | $ 384,438 | $ 372,037 | $ 384,438 | $ 4,526,447 |
| Rent & CAM | 216,779 | 216,779 | 216,779 | 216,779 | 216,779 | 216,779 | 216,779 | 216,779 | 216,779 | 216,779 | 216,779 | 216,779 | $ 2,601,346 |
| Other SG&A | 296,587 | 296,587 | 296,587 | 296,587 | 296,587 | 296,587 | 296,587 | 296,587 | 296,587 | 296,587 | 296,587 | 296,587 | $ 3,559,049 |
| Total | $ 897,804 | $ 860,601 | $ 897,804 | $ 885,403 | $ 897,804 | $ 885,403 | $ 897,804 | $ 897,804 | $ 885,403 | $ 897,804 | $ 885,403 | $ 897,804 | $ 10,686,842 |
| Operating Income (loss) | $ 249,587 | $ 213,250 | $ 139,295 | $ 65,030 | $ 9,677 | $ (74,181) | $ (84,649) | $ 48,666 | $ 291,628 | $ 5,146 | $ (67,530) | $ 48,666 | 828,953 |
| Other Income (expenses) | | | | | | | | | | | | | |
| Interest expense | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | $ (15,852) | (190,227) |
| Interest income | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 39,000 |
| Other income | | | | | | | | | | | | | |
| Gain on sale of assets | | | | | | | | | | | | | |
| Total other Income (expense) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | $ (12,602) | (151,227) |
| Income (Loss) | $ 236,984 | $ 200,648 | $ 126,693 | $ 52,428 | $ (2,925) | $ (86,783) | $ (97,251) | $ 36,064 | $ 279,026 | $ (7,456) | $ (80,133) | $ 36,064 | 677,726 |

**EXHIBIT "D"**

## LIQUIDATION ANALYSIS

**Assets:**

Inventory based on a net recovery after costs of liquidation:
      between $1,900,000.00 (20% net) and $2,275,000.00 (25% net)

Furniture and fixtures and office equipment:
      $35,000.00

Cash in bank (including CD Bank collateral):
      $400,000.00

Accounts Receivable:
      $45,000.00

Vehicles:
      $30,000.00

Mortgage Receivable:
      between $480,000.00 (20% discount from face value) and $540,000.00 (10% discount
      from face value)

Estimated liquidation proceeds before costs and expenses of administration:
      between $2,890,000.00 and $3,325,000.00.

**Liabilities:**

BankAtlantic, Secured:
      $3,100,000

Unsecured priority:
      $69,000.00, severance pay
      $100,000.00, priority tax claims.

Current unpaid liabilities in Chapter 11 Administration:
      $350,000.00.

Unsecured claims, excluding potential lease rejection damage claims for rejection of lease for
Miami, Ft. Lauderdale, New York, New Jersey and Los Angeles and other executory contract not
previously rejected in the Chapter 11 case:
      $10,600,000.00.

All number used in this liquidation analysis are rounded.

Refer to Exhibit "B" for summary of scheduled assets and liabilities of Pearl Companies, Inc.,
Pearl Paint Company, Inc., Pearl Artist & Craft Supply Corp. and Pearl Art & Craft Supplies of
California, Inc.